PRPJ BERGEN, INC., James Atkinson, Victor Colaio, Bernard Favuzza, Robert Fleming, James Smyth, Robert Clements, William Jones, William Minardi, Richard Roberti, Kevin Ryan, Thomas Roberts, Paul Daly, Gerald Hayes, Gregory Sheerins, Martin Donohue,

Seven Samurai Associates, Inc., Gregory Ryan, Richard Greene, Thomas Conaghan, Richard Jackson, Anthony Lupo, Timothy Coughlin, Leonard Monteleone, Theodore Smith and Joseph Dickey, Plaintiffs,

v.

James R. PLATE, Edward Donnelly, Plate Donnelly Associates, Coughlin Management, Inc., Condo Mart, Inc., Little View, Inc., Marina Vista Associates, L.P., Lawrence McAllister, Robert Vinicombe and Skyshore Realty, Inc., Defendants.

PRPJ BERGEN, INC., Peter McKay, Richard Jackson, Paul Ryan, John Atkinson, James Atkinson, Victor Colaio, Bernard Favuzza, Robert Fleming, Matthew Laurence, James Smyth, Robert Clements, William Jones, William Minardi, Richard Roberti, Kevin Ryan, Paul Daly, Gerald Hayes, Gregory Sheerins, Thomas Roberts and Martin Donohue, Plaintiffs,

v.

UNITED JERSEY BANK, a banking institution of the State of New Jersey and successor in interest to United Jersey/Commercial Trust and to Commercial Trust Company of New Jersey, Catherine A. Brennan, John M. Krivacs, Richard O. Carmichael, Martin J. Carbotti, William Schumacher, Marc P. Sullivan, Peter J. Gindin and Robert W. Brown, Defendants.

Nos. 90 Civ. 6788(MEL), 91 Civ. 3331(MEL).

United States District Court, S.D. New York.

Sept. 27, 1991.

Stein, Zauderer, Ellenhorn, Frischer & Sharp, New York City (Bertrand C. Sellier, Eric M. Schmidt, of counsel), and Wolff & Samson, P.C., Roseland, N.J., Arthur S. Goldstein, Daniel D. Caldwell, Harlan L. Cohen, of counsel), for defendant United Jersey Bank.

LeBoeuf, Lamb, Leiby & MacRae, New York City (Frederick B. Lacey, David S. Turetsky, Thomas Fenerty, of counsel), for defendant United Jersey Bank.

Messinger, Kantor & Flaster, P.C., New York City (Stanley L. Kantor, of counsel), and Cerrato, Dawes, Collins, Saker & Brown, Freehold, N.J., for defendants Coughlin Management, Inc. and Condo Mart, Inc.

LASKER, District Judge.

These motions concern the most appropriate forum for the litigation of three lawsuits all arising from claims of fraud in the sale and financing of certain New Jersey real estate projects. Two of the claims are pending before this Court, and one is pending in the District of New Jersey.

The first action before this court ("New York Action 1"), *PRPJ Bergen, Inc., et al. v. United Jersey Bank, et al.*, No. 90 Civ. 6788, was filed on October 22, 1990. PRPJ Bergen Inc. ("PRPJ"), a New Jersey corporation, and a number of individual investors, most of whom are residents of New York, sued James R. Plate, a New Jersey real estate developer, his partners, and associated entities, all of whom are New Jersey residents, for having fraudulently induced plaintiffs to invest in certain real estate limited partnerships and condominium units in New Jersey ("New York Action 1"). On March 28, 1991, United Jersey Bank ("UJB"), a New Jersey banking institution, filed a lawsuit in the District of New Jersey ("New Jersey Action"), *United Jersey Bank v. McKay*, No. 91–1321, which is in many respects the mirror image of this action. UJB named most of the plaintiffs in the New York action (the investors) [1] as well as Plate and his associates, as defendants. The New York plaintiffs

Christy & Viener, New York City (Daniel J. Sullivan, James M. Minamoto, Sharon Parella, of counsel), for plaintiffs.

1. The New Jersey action names all but four of   the New York plaintiffs as defendants.

now move to enjoin or stay the prosecution of the *in personam* claims in the New Jersey Action; while the plaintiffs in the New York action (defendants here) cross-move to dismiss, transfer, or stay this action.

The New York plaintiffs also move to consolidate New York Action 1 with an action filed on May 15, 1991, in the Southern District of New York, *PRPJ Bergen Inc. v. United Jersey Bank, et al.*, No. 91–3331 ("New York Action 2), by essentially the same plaintiffs as in New York Action 1, or, in the alternative, to amend the complaint in the first New York action to add claims against UJB and the individual UJB defendants. The basic difference between the second New York action and the first one is that plaintiffs name UJB, the plaintiff in the New Jersey action, and eight UJB former or present officers as defendants in the second action.

In addition, two of the New York defendants have made motions to dismiss on grounds of lack of personal jurisdiction.

## I.

New York Action 1 alleges that Plate and certain of his affiliates and companies ("Plate Entities") promoted and sold to plaintiffs certain fraudulent real estate investments. Damages are sought with respect to two Plate projects located in New Jersey: the Park River Towers project and the Marina Vista project. PRPJ, a New Jersey corporation that was formed to serve as an investment vehicle for the purchase and subsequent conversion into a condominium of Park River Towers, is the lead plaintiff in this action. Neither UJB nor any of its employees is a defendant in New York Action 1.[2]

UJB financed a number of Plate's real estate projects by providing loans to investors in Plate's projects, including a $6.75 million loan to PRPJ in connection with the Park River Towers project. In the New Jersey Action, UJB sued PRPJ and a number of other investors, alleging that they had conspired with Plate to induce UJB to lend money on the basis of false financial projections.[3] As stated earlier, the New Jersey Action is essentially the mirror image of the New York action: UJB is claimed to be the victim of what is alleged to have been a fraud perpetrated by the plaintiffs (investors) with Plate (the developer) against UJB; while in the New York actions, plaintiffs claim that they were defrauded by Plate and UJB. In addition to damages, the New Jersey Action seeks foreclosure with respect to sixty-five parcels of New Jersey real estate.

The investors responded to the filing of the New Jersey Action by instituting New York Action 2, which alleges that UJB and eight of its present or former officers aided and abetted Plate by facilitating the fraudulent real estate transactions by providing ready financing when it knew that the investments would fail.[4]

---

**2.** Plaintiffs claim that the sole reason they did not name UJB and the UJB officers as defendants in New York Action 1 was that plaintiffs were deceptively led by UJB to believe that it wanted to resolve the dispute without litigation. UJB vigorously contests this claim, stating that it had no idea that plaintiffs intended to file an action at all at the time New York Action 1 was filed, and that it learned of the suit only later by accident in the course of a deposition. Apparently workout negotiations between UJB and the investors concerning both the PRPJ loan and other loans were initiated in late 1989 or early 1990 and continued until sometime in March 1991. On March 28, 1991, UJB filed the New Jersey Action against the investors (the plaintiffs in this action).

**3.** The basis for these claims of conspiracy appears to lie in the fact that until the mid–80s, Plate worked at a bond trading company in New York called RMJ Securities Corp. ("RMJ"), where a number of the investors now work. In fact, PRPJ is solely controlled by four individuals—McKay, Ryan, Atkinson, and Jackson—who are the principals of RMJ.

**4.** On May 15, 1991, the plaintiffs in the two New York actions filed a motion in this Court to enjoin or stay UJB from prosecuting the New Jersey action. This motion also sought to consolidate the two New York actions or alternatively, permission to amend the complaint in New York Action 1. On May 16, 1991, the defendants in the New Jersey action, sought a stay of the New Jersey Action pending a decision by this Court on these motions. On May 28, 1991, plaintiffs in the New Jersey Action made a cross-motion for an order adjudicating and declaring that the New Jersey Action was in fact the first filed action and enjoining prosecution of the allegedly later filed New York action.

## II.

■ Because the New York and New Jersey lawsuits are essentially mirror images of each other, considerations of judicial economy and the threat of inconsistent results dictate that the cases be handled by only one court. Neither party seriously opposes consolidation:[5] The dispute rather is over whether the cases should be consolidated in New Jersey or New York.

The rule in this circuit is that "[w]here there are two competing lawsuits, the first suit should have priority, absent a showing of balance of convenience ... or ... special circumstances giving priority to the second." *First City National Bank & Trust Co. v. Simmons*, 878 F.2d 76, 79 (2d Cir. 1989) (citations omitted). Thus, "where an action is brought in one federal district court and a later action embracing the same issue is brought in another federal district court, the first court has jurisdiction to enjoin the prosecution of the second action unless there are special circumstances which justify giving priority to the second action." *New York v. Exxon Corp.*, 932 F.2d 1020, 1025 (2d Cir.1991) (citations omitted). Accordingly, on this motion to enjoin or stay the New Jersey action, the issues to be decided are: (1) whether the action filed in this Court is the "first filed" action, and, if so, (2) whether it falls under either the "special circumstances" or "balance of convenience" exceptions.

New York Action 1 was filed on October 22, 1990; UJB filed its New Jersey action on March 28, 1991. The New York suit was thus first in time. UJB argues, however, that in order to enforce the first-filed rule, there must be absolute identity of parties and that since neither UJB nor the individual UJB defendants are parties to New York Action 1, New York Action 1 is not "first-filed" with respect to the New Jersey Action. However, it is unnecessary to decide which action was first-filed because even if the New York actions enjoy "first-filed" status, the "special circumstances" exception to the first-filed rule mandates that the case be tried in New Jersey.

### The "Special Circumstances" Exception.

■ In general, a first-filed action will preempt all later filed actions. However, the first-filed rule is not to be mechanically applied. Where the circumstances surrounding the filing of the first suit cast suspicion on the plaintiff's motives for filing suit or where other "special circumstances" exist which weigh heavily in favor of the second forum, the determination of which action should proceed is entrusted to the trial court's discretion. *See Kerotest Manufacturing Co. v. C–O–Two Fire Equipment Co.*, 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952); *First City National Bank & Trust Co. v. Simmons*, 878 F.2d 76, 79 (2d Cir.1989). This case presents a close question, but the facts tip in favor of transfer to the New Jersey forum.

First, where the parties concede, as they do here, that New Jersey is the forum in which the *in rem* claims should be litigated and is the only forum in which the foreclosure claims can be litigated, it seems inefficient to force UJB to litigate in two separate forums and force two courts to become involved with the resolution of the parties' dispute.[6]

Moreover, a New Jersey court is better qualified to interpret New Jersey law. On a motion to stay, dismiss, or transfer, such a factor is an appropriate consideration. *See, e.g., Filmline (Cross–Country) Pro-*

---

On June 17, 1991, Judge Garrett Brown of the District of New Jersey stayed both the motions and cross-motions before that court pending this Court's determination.

5. While UJB and one of the individual UJB defendants do not oppose the motion to consolidate the two New York Actions, they do suggest that the Court consolidate the two actions and transfer them to the District of New Jersey.

6. Plaintiffs raise the point that regardless of whether the case is litigated in New Jersey or New York, two courts will have to get involved in the litigation since, in any case, the foreclosure claims will have to be heard by a New Jersey *state* court. However, in the event the case were litigated in New York, not two but *three* courts would have to become involved in this litigation, since the other *in rem* claims would probably still have to be litigated in New Jersey federal court.

*ductions, Inc. v. United Artists Corp.*, 865 F.2d 513, 529 (2d Cir.1989). The New York plaintiffs concede that the PRPJ note and mortgages are governed by New Jersey law—by their own terms—but argue that New York law governs all other legal issues that may arise in the case since the frauds and the underlying transactions are alleged to have occurred in New York. However, it appears likely that all the relevant contracts, not just the loan documentation, are governed by New Jersey law because the promissory notes specify that they incorporate by reference the underlying loan documentation, and the mortgages and collateral assignments of leases contain an explicit instruction that they, and all matters relating thereto, are to be governed by New Jersey law. Moreover, even if New Jersey law would not automatically apply, under New York choice of law rules, the applicable law is that of the state with the most significant contacts with the matter in dispute. *Auten v. Auten*, 308 N.Y. 155, 124 N.E.2d 99, 102 (1954). It follows that since New Jersey is the situs of the majority of the operative facts, New Jersey law will likely control.

■ Furthermore, this dispute presents a question of whether New Jersey's "entire controversy" doctrine should apply. The product of case law, the doctrine provides that all claims relating to a particular controversy must be brought in the initial proceeding, and if they are not, will be foreclosed in later proceedings. UJB argues that the doctrine mandates transfer to the New Jersey court because it is the only court authorized to decide the foreclosure issues and therefore the only court capable of resolving all the issues in this case. Without deciding whether the doctrine in fact applies, it is plain that the New Jersey court is better fitted than this Court to judge its applicability to this case.

The New York plaintiffs argue that the case should be litigated in New York because New York courts have a strong interest in protecting its residents[7] from fraud perpetrated in New York and in applying New York law for such purposes. It is true that UJB came to New York to solicit plaintiffs' participation in the real estate investment schemes which are the subject of this litigation, and that thereafter UJB representative came to New York to tender closing documentation for the purchase of individual condominium units. However, the misrepresentations that plaintiffs charge were made, all concern New Jersey real estate and New Jersey businesses. In addition, the relevant documents, although signed in New York, were prepared in New Jersey and appear—by their own terms—to be governed by New Jersey law. Furthermore, the investments in question were financed by UJB, a New Jersey bank, and the lead plaintiff in the New York actions—PRPJ—is a New Jersey corporation. Thus it appears that New Jersey is the situs of the overwhelming majority of the operative facts, and has an equally strong, if not stronger, interest in this litigation.

The "balance of convenience" factor also militates this result. Regardless of the situs of the alleged fraud, to prove that fraud, the focus of discovery and testimony will involve matters pertaining to New Jersey, such as the acquisition, construction and operating costs of the Park River Towers and other apartment complexes developed by Plate. Moreover, the majority of witnesses and documents in this case will probably be located in New Jersey.

Finally, since this case will be tried to a jury, questions as to whether representations as to New Jersey real property were falsely made are more likely to be knowledgeably decided by New Jersey residents of the vicinage. Such matters are at the heart of the lawsuit.

*Transfer Pursuant to FRCP 1404*

Defendants have also moved to transfer the cases to the District of New Jersey under the provisions of 28 U.S.C. § 1404. The discussion above, although directed to other considerations, establishes that such a transfer is appropriate. New Jersey is the situs of the majority of operative facts; the key witnesses and documents are predominantly located in New Jersey; and the

---

**7.** Almost all of the individual plaintiffs in the New York actions are residents of New York.

211 205

relevant contracts contain a forum selection clause providing that New Jersey law is to govern any dispute arising from the transactions.

In sum, New Jersey appears to be the more appropriate forum for this lawsuit. Plaintiffs' motion to stay the New Jersey Action is denied. Plaintiffs' motion to amend and to consolidate is granted. The motion of defendants Coughlin Management Inc. and Condo Mart, Inc. to transfer New York Action 1 to the District of New Jersey and the motion of defendant UJB to transfer New York Action 2 to the District Court of New Jersey are granted.

It is so ordered.