**CONGRESS CREDIT CORPORATION,**
**Plaintiff, Appellant,**

v.

**AJC INTERNATIONAL, INC., et al., Defendants, Appellees.**

**No. 94–1766.**

United States Court of Appeals,
First Circuit.

Heard Nov. 7, 1994.

Decided Dec. 15, 1994.

---

Ronald L. Rosenbaum, with whom Woods, Rosenbaum, Luckeroth & Perez Gonzalez, San Juan, PR, was on brief, for appellant.

Brian K. Tester, with whom Richard A. Lee Law Office, San Juan, PR, was on brief, for appellees.

Before CAMPBELL, Senior Circuit Judge, BOYLE * and FUSTÉ,** District Judges.

LEVIN H. CAMPBELL, Senior Circuit Judge.

Congress Credit Corporation ("Congress Credit") appeals from the district court's dismissal without prejudice of its diversity action to collect certain proceeds in the hands of the appellees, AJC International, Inc. ("AJC") and Fronex Commodities, Inc. ("Fronex") under a perfected factor's lien. The lien was allegedly granted to Congress Credit by United Western of Puerto Rico, Inc. ("United Western"), which later filed for bankruptcy. The district court has dismissed the lien action without prejudice, apparently believing that Congress Credit should not presently proceed with its lien action due to the pendency of several adversary proceedings brought in the bankruptcy court by the trustee of United Western to recover the same sums as preferences from these same defendants. This court initially affirmed, but upon considering Congress Credit's petition for rehearing, and after giving the matter further thought, has vacated its opinion and judgment of affirmance. We now hold that the district court was without authority to dismiss Congress Credit's diversity action to enforce its lien, and we vacate

* Of the District of Rhode Island, sitting by designation.

** Of the District of Puerto Rico, sitting by designation.

and remand for further proceedings in the district court.

## FACTUAL AND PROCEDURAL BACKGROUND

Congress Credit is a commercial finance company. It financed the accounts receivable and inventory of United Western and claims to hold a recorded Factor's Lien and Assignment of Accounts Receivable given by United Western pursuant to the Puerto Rico Factors Lien and Assignment of Accounts Receivable Acts.[1] On March 2, 1990, United Western filed a petition in bankruptcy under Chapter 11 of the Bankruptcy Code, which was converted to Chapter 7 on September 7, 1990.

Appellees were suppliers of United Western, who allegedly, within the ninety days prior to the bankruptcy filing, received bulk transfers of inventory from United Western in payment of its outstanding indebtedness to them—$376,610.79 in the case of AJC and $81,178.60 in the case of Fronex.[2] On May 11, 1990, United Western commenced adversary proceedings in the bankruptcy court against the appellees, alleging that the inventory sales constituted preferential transfers. After the conversion to Chapter 7 the trustee was substituted for the debtor as plaintiff. Congress Credit commenced this action in the district court under diversity jurisdiction to recover essentially the same assets, or their proceeds, on June 1, 1990, alleging that the merchandise thus transferred had been subject to its factor's lien.

On June 7, 1990 (some six days after filing its lien action in the district court) Congress Credit filed an adversary proceeding in the bankruptcy court, asserting a claim to any recovery the estate might obtain in the preference actions. The trustee did not contest this proceeding; accordingly, judgment was entered on February 11, 1992 in favor of Congress Credit, securing Congress Credit's right to any such recovery.

The appellees having successfully obtained a stay of the lien action on August 31, 1990, pending resolution of the adversary proceedings in the bankruptcy court, Congress Credit next moved the district court to lift that stay on August 27, 1992. The appellees opposed that motion and moved to dismiss on September 28, 1992. The district court denied the motion to vacate the stay and granted the motion to dismiss in an opinion and order dated April 16, 1993. Congress Credit's unsuccessful motion for reconsideration was denied in a second opinion and order dated June 8, 1994, which reiterated the grounds stated in the first opinion. Congress Credit then appealed.

Congress Credit represents that there are no funds in United Western's estate and that the bankrupt's business has long since been liquidated.[3] The record also shows that the bankruptcy judge has rejected a proposed agreement for Congress Credit to finance the trustee's preference actions and has ordered the trustee to show cause why the preference actions should not be dismissed, as none of the proceeds would benefit the estate (i.e. they would presumably all go to Congress Credit under the bankruptcy court's order of February 11, 1992).

The district court, nonetheless, reasoned that Congress Credit's interests were fully protected by and could await the results of the trustee's preference actions. The court

---

1. P.R. Laws Ann. tit. 10, §§ 551–60, 581–88 (1976). The status and validity of this lien is not presently before us, although it plays a central role in the controversy.

2. Two other suppliers of United Western also allegedly received bulk transfers within the ninety day preference period, in the amounts of $180,504.84 in the case of Agro International ("Agro") (originally a named defendant in this suit) and $23,000.00 in the case of Top Flight, Inc. ("Top Flight"). Congress Credit represents that both of these entities have been liquidated while this litigation has been pending.

3. Not having the record in the bankruptcy case before us, we cannot know for certain that this is correct. If it is, and if, as may be the case, *infra*, the preference action cannot benefit the estate, there may be no point in having the trustee seek to recover property all of which must be turned over to Congress Credit, with the inflation of legal fees that this might entail. On the other hand, there may be legitimate reasons justifying continuance of the preference actions. Sorting out and making the best provision for these realities is something we leave to the district court on remand.

seemed to base the dismissal of the lien action on its understanding that it was merely duplicative of the pending preference actions:

> The trustee's adversary proceeding and this case involve the same transactions, property and parties. The only difference between the cases lies in the legal bases for challenging the validity of the transfers. A judgment in the civil action would most certainly have an effect on the debtor's estate.... [M]aintenance of two proceedings adjudicating the same issues consumes scarce judicial resources.

## ANALYSIS

■ Shortly after hearing this appeal, we summarily affirmed the district court's judgment of dismissal as, at first blush, it seemed sensible to permit matters to be pursued and, if possible, concluded in the bankruptcy court. Like the district court, we were unhappy at the prospect of the two cases—the preference actions and the lien action—wasting scarce resources by proceeding on separate tracks in different courts, with the risk of multiple judgments. We are now persuaded, however, that the district court's proposed solution to this dilemma was legally insupportable. The correct, as well as most efficient solution, is for both proceedings to be consolidated for disposition in the district court, which is the only court with clear jurisdiction over both.

■ While the lien action and the preference actions apparently involve the identical property, they are not one and the same action, permitting dismissal of one as surplus to the other. They do not involve the same parties nor the same causes of action. The law suit from which this appeal is taken—the lien action—is a diversity action to enforce a lien created under Puerto Rico law. P.R. Laws Ann. tit. 10, §§ 551–60, 581–88 (1976). Congress Credit must prove the existence and validity of the lien, and, in addition, that

the lien attached to the inventory transferred to the appellees and followed to any claimed proceeds now in their hands. The trustee, on the other hand, must show, *inter alia,* that the inventory was property of the estate when transferred to appellees so that its transfer to them was a preference. 11 U.S.C. § 547(b) (1988) ("the trustee may avoid any transfer of *an interest of the debtor* in property") (emphasis added); *see generally* 4 Collier on Bankruptcy, § 547.01 (Lawrence P. King, ed. 1994) (discussing elements of a preference claim). This may require consideration of the extent to which Congress Credit's asserted lien removed the inventory from the debtor's property and made it instead the property of Congress Credit prior to the filing of United Western's bankruptcy petition.[4] Thus, the legal operation and validity of the lien is an issue of some importance to both cases. However, the plaintiffs and the legal theories for recovery in each case are different.

■ The district court apparently viewed the two cases as based on identical, parallel theories, giving the earlier preference cases a right to proceed exclusive of the subsequent lien action. This analysis overlooked the major differences between the two causes of action. A district court may certainly dismiss an action which is merely "duplicative" of another action pending in another federal court. *See Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976); *Small v. Wageman,* 291 F.2d 734, 735 (1st Cir.1961); 17A Charles Alan Wright et al., Federal Practice and Procedure § 4247 nn. 7–8 and accompanying text (2nd ed. 1988). But for an action to be "duplicative" of another, so as to warrant its dismissal for that reason alone, the one must be materially on all fours with the other. The present lien action is not at all in that category. The plaintiff in the lien action is different from that in the preference actions, and the theory of recovery is altogether different. *See, e.g.,*

---

4. The operation of the lien is a question of Puerto Rico law. *See* 4 *Collier on Bankruptcy,* § 541.02[1] (Lawrence P. King, ed. 1994) ("Section 541 provides that the commencement of a case creates an estate consisting, most importantly, of all legal or equitable interests of the debtor in property at the time of the commencement of the case. Under this provision it will still be necessary to look to nonbankruptcy law, usually to state law, to determine whether the debtor has any legal or equitable interest in any particular item.")

*Thermal Dynamics Corp. v. Union Carbide Corp.*, 214 F.Supp. 773, 774 (S.D.N.Y.1963) (in order to properly enjoin suit in another court, the issues "must have such an identity that a determination in one action leaves little or nothing to be determined in the other"); *Radio Corp. of America v. Rauland Corp.*, 16 F.R.D. 160, 163 (N.D.Ill.1954) (federal court should not stay proceedings in its own jurisdiction unless it appears that parties and issues are the same), *mandamus denied*, 217 F.2d 218 (7th Cir.1954), *cert. denied*, 348 U.S. 973, 75 S.Ct. 533, 99 L.Ed. 758 (1955), *mandamus denied*, 348 U.S. 968, 75 S.Ct. 543, 99 L.Ed. 754 (1955).

We think it clear, therefore, that there is no justification for dismissing the present lien action on the basis of a supposed identity between it and the preference actions. Nor can we see any bankruptcy-related theory allowing the district court to force Congress Credit to depend upon the preference proceedings in the bankruptcy court for the collection of its lien. We are advised that the automatic stay as to Congress Credit has long since been vacated. *See* 11 U.S.C. § 362(a) (1988) (staying actions against the debtor, property of the debtor, or property of the estate). Direct enforcement of Congress Credit's lien must be accomplished by a state law action brought in the Puerto Rico courts or a federal court sitting in diversity. It is doubtful whether a bankruptcy court has jurisdiction at all over such a lien action, which is clearly not a core bankruptcy matter, *see* 28 U.S.C. § 157(b) (1988). Conceivably, in proper circumstances, a bankruptcy court might handle a lien enforcement action as a non-core but "related" proceeding under the eye of the district court, which would have final say over its disposition. 28 U.S.C. § 157(c) (1988) (bankruptcy court may hear a non-core proceeding, but final disposition of such must be by the district court). Most probably, although we do not rule on the question, the lien action is not even a "related" proceeding. The lien holder here claims, and has been awarded by order of the bankruptcy court, the right to all recovery in the preference actions. This suggests that, by now, the result in the lien proceeding can have no impact whatever upon the bankruptcy estate. *See, e.g., In re North Star Contracting Corp.*, 146 B.R. 514, 519 (Bankr. S.D.N.Y.1992) (action is "related to" a bankruptcy if outcome could alter the debtor's rights, liabilities, options, or freedom of action, or in any way impacts upon the handling and administration of the bankruptcy estate); *In re Chambers*, 125 B.R. 788, 793 (Bankr.W.D.Mo.1991) (matter not "related to" Title 11 where neither amount of property available for distribution, not the allocation of property among creditors, is affected by the dispute). If the lien enforcement action is not a "related" proceeding, the bankruptcy court would lack any jurisdiction whatever over it. In any event, it is difficult to justify ousting Congress Credit, even temporarily, from the district court—which clearly has diversity jurisdiction over its lien action—leaving its rights under the lien to be secured in the more round about preference proceeding, requiring proof of additional elements, in a court probably lacking any jurisdiction to enforce the lien claim directly.

■ In these circumstances, we think it was erroneous to defer to the trustee's and the bankruptcy court's lead in the preference proceedings—proceedings which, at best, seem poorly tailored to Congress Credit's present needs, and which in any case seem to have lost steam. To be sure, it makes no sense for the two actions to proceed along separate tracks, inviting a defense strategy of divide and conquer. But there is a better solution to this problem, namely, to consolidate both proceedings in the one court, here the district court, where jurisdiction over both actions plainly exists. This will enable attention to be directed where it should have been directed all along—to the merits or demerits of the claims against the appellees, without the distraction of conceivable double or conflicting recoveries in different courts.

We, therefore, vacate and remand to the district court with instructions that it provide appropriate notice to the trustee in bankruptcy, directing him to show cause in the district court why the preference claims should not be brought up to the district court from the bankruptcy court and either abandoned or dismissed or else continued in con-

solidation with the lien claim.[5] The district court can either dismiss the preference claims if it determines that they lack viability (assuming the bankruptcy court has not done so, *see* n. 5) or allow the trustee to pursue them in a consolidated proceeding in the district court together with the lien diversity action.

The power of the district court to consolidate the preference actions now pending in the bankruptcy court with the instant diversity lien action rests on its power to withdraw a case from the bankruptcy court "for cause shown." 28 U.S.C. § 157(d) (1988). Courts have done this where necessary in analogous instances. *See, e.g., In re Sevko, Inc.,* 143 B.R. 114, 117 (N.D.Ill.1992) (considerations of judicial economy adequate to meet "cause shown" requirement); *Enviro-Scope Corp. v. Westinghouse Elec. Corp. (In re Enviro-Scope Corp.),* 57 B.R. 1005, 1008–09 (E.D.Pa.1985) (same). We direct use of § 157(d) not because of any fault on the part of the bankruptcy court, but because bringing the preference claims into the district court will allow all facets of these controversies affecting the same property and the same defendants to be disposed of by one tribunal having undoubted jurisdiction and authority.

We emphasize that the question of whether there is any reason to continue the preference claims should be speedily resolved at the outset. To pursue them at the expense of the estate and, potentially, of the appellant's recovery, may be inadvisable and a waste of money. On the other hand, we do not want to prejudge the matter. If the preference claims still serve a proper purpose and should be pursued, they should be pursued in the district court in a consolidated proceeding together with the lien claim. We are confident that the district court, having both matters before it, will give expedited attention to ending the existing gridlock. Congress Credit is entitled to have the merits of its claims determined without further delay.

The district court's judgment of April 19, 1993, and its opinion and order of June 8, 1994, are vacated, and this case is remanded to the district court for proceedings consistent with this opinion.[6]

---

**5.** The bankruptcy court has already instituted inquiry into whether the preference claims should be continued now that it is clear that the sole beneficiary will be Congress Credit. The district court may, but need not, allow that inquiry to be resolved by the bankruptcy judge if it thinks this is the most efficient way to proceed. Alternatively, the district court may take charge of and resolve that inquiry itself. Given the nearly four years of wheelspinning, we direct the district court to do whatever is necessary to speedily resolve, or have resolved, the status of the preference proceedings so that appellant's lien claim, either alone or in tandem, can move ahead and be decided without further delay.

**6.** We treat the district court's opinion and order of June 8, 1994 as an appealable final judgment. *See Bankers Trust Co. v. Mallis,* 435 U.S. 381, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978).