**THE SCORE BOARD, INC., Plaintiff,**

**v.**

**UPPER DECK CO. and Upper Deck Authenticated, Ltd., Defendants.**

**Civil Action No. 96–2389.**

United States District Court,
D. New Jersey.

March 10, 1997.

Blank Rome Comisky & McCauley, by Peter J. Boyer, George Krueger, and Elizabeth Shirley Washko, Cherry Hill, NJ, for Plaintiff.

Whitman Breed Abbott & Morgan, by Andrew Muscato, John M. Newell, and John T. Shaban, Newark, NJ, for Defendants.

## OPINION ON MOTIONS FOR PRELIMINARY INJUNCTION, SUMMARY JUDGMENT, AND DISMISSAL OF COUNTERCLAIM

BROTMAN, District Judge.

This is a dispute about licensing and marketing of autographed sports memorabilia. Plaintiff The Score Board, Inc. ("Score Board") claims that defendants Upper Deck Co. (UDC) and Upper Deck Authenticated, Ltd. (UDA) (collectively "Upper Deck") are wrongfully infringing on Score Board's exclusive rights to market autographs and other indicia of baseball star Ken Griffey, Jr. Score Board seeks a preliminary injunction barring Upper Deck from selling items autographed by Griffey to retail catalog companies, stores, and television shopping networks. In addition, Score Board seeks dismissal of portions of Upper Deck's counterclaim. Upper Deck, meanwhile, has moved for summary judgment dismissing Score Board's complaint.

## I. BACKGROUND

Score Board is a corporation based in Cherry Hill, New Jersey that is active in the autographed sports memorabilia industry. The present dispute arises out of an October 1994 "Player Highlight Agreement" between Score Board and the Major League Baseball Players Association ("MLBPA"), pursuant to which the MLBPA granted Score Board a license to commercialize the indicia of Major League Baseball player Ken Griffey, Jr. ("Griffey"). A member of the MLBPA, Griffey is the starting centerfielder for Major League Baseball's Seattle Mariners and one of the most prominent players in baseball. Pursuant to this Score Board–MLBPA Player Highlight Agreement (the "Score Board Agreement"), Griffey agreed to autograph various items of sports memorabilia for Score Board to sell. In consideration, Score Board

contracted to pay Griffey a minimum guaranteed sum.[1]

The Score Board Agreement also contains certain limitations on Griffey's ability to sell autographed items elsewhere. Specifically, the Score Board Agreement provides:

> Player agrees not to autograph baseball items, memorabilia or collectibles for any other person or entity that he knows or has reason to believe will sell or attempt to sell such items *on a television shopping network or program, or in any retail catalogue or in any retail store.*

(emphasis added).

Upper Deck Company ("UDC"), a California corporation that is a competitor of Score Board's in the autographed sports memorabilia business, subsequently entered into a licensing contract with Griffey effective March 1, 1996.[2] This Upper Deck Agreement acknowledges Score Board's exclusive contractual right to sell autographed Griffey items through television shopping networks, but asserts that UDC is not precluded from selling such items "through channels other than television."

Score Board alleges that UDC and its affiliate Upper Deck Authenticated, Ltd. ("UDA") (collectively "Upper Deck") have in fact sold Griffey items "through channels other than television" despite having notice about the restrictions in the Score Board Agreement. Specifically, plaintiff contends, licensee UDC has transferred items autographed by Griffey to UDA, which has then marketed the items to retailers. A Score Board sales manager states that in April 1996, Service Merchandise Company, Inc. ("Service Merchandise") canceled an order from Score Board for over 400 Griffey autographed baseballs and told her it was going to buy from Upper Deck for a better price. This Score Board salesperson reports that shortly thereafter, she was told by a buyer at yet another retailer, Best Products Co., Inc.

("Best"), that Upper Deck had solicited Best to purchase Griffey autographed baseballs and photographs. The Best buyer testified to this effect in a deposition.

On May 22, 1996, Score Board instituted this diversity action against UDC and UDA for tortious interference with contractual rights, and for civil conspiracy. In late June, Score Board applied for an order to show cause why a preliminary injunction should not issue enjoining Upper Deck from selling Griffey autographed items to retail catalogue companies, stores, and television shopping networks. The Court deferred consideration of Score Board's preliminary injunction motion[3] pending discovery. In January, 1997, the parties completed briefing on the preliminary injunction motion; a motion by Upper Deck for summary judgment dismissing the Griffey action; and a motion by Score Board to dismiss portions of Upper Deck's counterclaim, and to strike an affirmative defense of improper venue. The Court heard oral argument on these motions on January 30, 1997.

## II. DISCUSSION

### A. PRELIMINARY INJUNCTION MOTION

#### 1. STANDARD FOR PRELIMINARY INJUNCTION

An injunction is an "extraordinary remedy which should be granted only in limited circumstances." *American Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1426–27 (3d Cir.1994) (citing *Frank's GMC Truck Center, Inc. v. General Motors Corp.*, 847 F.2d 100, 102 (3d Cir.1988)), *cert. denied*, —— U.S. ——, 115 S.Ct. 1838, 131 L.Ed.2d 757 (1995). "This proposition is particularly apt in motions for preliminary injunctions, when the motion comes before the facts are developed to a full extent through the normal course of discovery." *Id.* at 1427.

---

1. Upper Deck states in its reply brief that the MLBPA extended the Score Board Agreement in May 1996.

2. The record indicates that Griffey had entered into a prior licensing agreement with UDC in 1992.

3. The Court has exercised its discretion to treat Score Board's application for an order to show cause as a motion, and the parties have briefed and argued it as such.

Pursuant to the Third Circuit's test for preliminary injunctions, this Court is to issue such an injunction only if the plaintiff produces evidence sufficient to convince the Court that *each* of four factors favor preliminary relief:

> 1) the likelihood that the plaintiff will prevail on the merits at the final hearing; 2) the extent to which the plaintiff is being irreparably harmed by the conduct complained of; 3) the extent to which the defendant will suffer irreparable harm if the preliminary injunction is issued; and 4) the public interest.

*New Jersey Hosp. Assoc. v. Waldman,* 73 F.3d 509 (3d Cir.1995) (quoting *American Tel. and Tel. Co.,* 42 F.3d at 1427). Thus, a failure by Score Board to make the requisite showing regarding any one of these four factors must result in this Court denying its motion for a preliminary injunction. *See In re Arthur Treacher's Franchisee Litigation,* 689 F.2d 1137, 1143 (3d Cir.1982) ("[A] failure by the moving party to satisfy these prerequisites: that is, a failure to show likelihood of success or a failure to demonstrate irreparable injury, must necessarily result in the denial of a preliminary injunction.")

### a. *Likelihood of Success on the Merits at Final Hearing*

To satisfy the first prong of the preliminary injunction test in the Third Circuit, a movant must demonstrate a "reasonable probability of eventual success in the litigation." *Kershner v. Mazurkiewicz,* 670 F.2d 440, 443 (3d Cir.1982). "It is not necessary that the moving party's right to a final decision after trial be wholly without doubt; rather, the burden is on the party seeking relief to make a *prima facie* case showing a reasonable probability that it will prevail on the merits." *Oburn v. Shapp,* 521 F.2d 142, 148 (3d Cir.1975).

### (1) Claim of Tortious Interference With Contract

In order to prevail on its claim that defendants tortiously interfered with the Highlight Agreement, Score Board must prove: 1) there was an existing contractual relationship between Score Board and Griffey, i.e. the Score Board Agreement relationship; 2) Upper Deck knew of the Agreement and its restrictions; 3) Upper Deck intentionally and unjustifiably interfered with this relationship; and 4) Score Board suffered damages resulting from such interference. *Fleming v. United Parcel Service, Inc.,* 255 N.J.Super. 108, 604 A.2d 657 (Law Div.1992), *aff'd,* 273 N.J.Super. 526, 642 A.2d 1029 (App. Div.1994); *Storis, Inc. v. GERS Retail Systems, Inc.,* 1995 WL 337100 (D.N.J.1995).[4]

Upper Deck does not dispute that there is a contractual relationship between Score Board and Griffey, and that this relationship existed at the time UDC negotiated with Griffey's agent, Brian Goldberg, in 1996. Moreover, defendants agree that the Score Board Agreement reflecting this relationship contains the store and catalog restrictions at issue in this litigation.

Upper Deck instead argues for dismissal of the tortious interference claim on the grounds that it did not know of the store and

---

**4.** In this diversity case, a Federal district court determines the substantive law it will apply by looking to the choice of law rules in the forum state. *McFarland v. Miller,* 14 F.3d 912, 917 (3d Cir.1994). Accordingly, New Jersey choice of law rules apply here.

New Jersey applies governmental interest analysis to resolve choice of law issues in tort cases. *Veazey v. Doremus,* 103 N.J. 244, 510 A.2d 1187, 1189–90 (1986). Under this test, the applicable law is that of the state with the greatest interest in governing the particular issue.

The initial step in this analysis is to determine whether a conflict exists between the law of the interested states. If an actual conflict exists, the Court must then identify the policies underlying the law of each state and determine how those policies are affected by each state's contacts to the litigation and to the parties. *Id.* In this case, the states with substantial interest are New Jersey, where Score Board is incorporated and headquartered, and California, where defendants are based. As defendants acknowledge, there is very little conflict between New Jersey and California law on tortious interference and civil conspiracy. This argues for application of the laws of the forum state, New Jersey. Also favoring use of New Jersey law is the state's profound interest in protecting the contractual rights of its citizens, particularly where enforcement of its law will not contravene the policies of another interested state. *R.J. Longo Const. v. Transit America,* 921 F.Supp. 1295, 1305 (D.N.J.1996). Accordingly, New Jersey provides the governing substantive law in this action.

catalog restrictions when it entered into its 1996 agreement with Griffey. Upper Deck contends that it entered into its contract with Griffey in March 1996, and that it learned of the restrictions only afterward. Upper Deck also states that Goldberg told its corporate counsel Takehiko Suzuki that he thought the Score Board Agreement would terminate in April 1996. Upper Deck argues that it never would have entered into an agreement with Griffey regarding autographs if it thought it was subject to all of the restrictions in the Score Board Agreement.

The evidence, however, strongly indicates that Upper Deck did know of the restrictions when it entered into its agreement with Griffey in 1996. As an initial matter, the evidence is strong that while this Upper Deck Agreement with the Mariners star is effective as of March 1996, it was actually not fully executed into until on or about May 22, 1996. Suzuki testified in a deposition that Upper Deck executed the contract "probably close to May 22." Moreover, it was not until May 22 that Suzuki sent a "fully executed" contract to Goldberg. Griffey himself may have signed in March, but ultimately the contract was not effective until Upper Deck signed in May.

There is, in turn, strong record evidence that Upper Deck knew of the restrictions before it signed its agreement with Griffey. This evidence includes written communications in February and early May 1996 from Goldberg to Upper Deck noting conditions in the Score Board Agreement; a May 9 internal memorandum from an UDA sales manager to Suzuki; a draft of an Upper Deck letter to Service Merchandise, prepared on or about May 16, acknowledging restrictions on Upper Deck's right to sell Griffey items through catalogs; and a statement by Goldberg, in a declaration filed in this action, that UDC "was well aware of the restrictions of the Score Board Agreement."[5] Upper Deck's various explanations for why this evi-

dence does not establish its knowledge of the restrictions are unconvincing.

The intentional nature of Upper Deck's interference with the Score Board agreement is reflected by the apparent fact that UDC executed its contract with Griffey—and UDA sold Griffey items to retailers—after both UDC and UDA had knowledge of the restric- tions. Moreover, there appears to have been no justification for this interference.

There is no question but that plaintiff has suffered damages as a result of Upper Deck's interference with the Score Board Agreement. First, Upper Deck itself virtually acknowledges that Score Board lost a sale of 436 baseballs (valued at over $19,000 retail) that had been scheduled to Service Merchandise. Moreover, Upper Deck itself cites deposition testimony from Score Board's president that he is told Service Merchandise is ordering "Griffey stuff" from Upper Deck instead of Score Board. Score Board's president also testified that Score Board was having difficulty getting Griffey to sign additional items for sale as a result of this tortious interference litigation. Finally, Score Board has clearly lost goodwill, since it has held itself out as the exclusive supplier of Griffey items only to have Upper Deck offer these products as well.

In sum, the court has concluded that Score Board is likely to succeed on its tortious interference claim.

### (2) Claim of Civil Conspiracy

■ To show civil conspiracy, Score Board must show that UDC and UDA: 1) planned to commit an unlawful act, or to commit a lawful act by unlawful means; and 2) committed such an overt act, resulting in damages. *Morgan v. Union County Bd. of Chosen Freeholders*, 268 N.J.Super. 337, 633 A.2d 985 (App.Div.1993).

■ Score Board alleges that UDC conspired with UDA to have autographed merchandise transferred to UDA, knowing that UDA would then sell the merchandise in

---

5. Upper Deck challenges Goldberg's declaration based on his subsequent deposition testimony, including a statement that Score Board's attorneys altered the declaration after he signed a signature page. The Court nevertheless finds the declaration credible in light of the other evi-

dence, evidence that the changes to the declaration were minor, and indications that Goldberg was intimidated by Upper Deck's attorneys before his deposition. Attorneys for Score Board should take heed, however, that changing a declaration after it has been signed is improper.

violation of the Score Board agreement. Plaintiff claims that UDC and UDA are affiliated companies with overlapping ownership. Score Board alleges at least two specific overt acts of tortious interference reflecting civil conspiracy: 1) UDC and UDA have caused one retailer, Service Merchandise, to cancel an order for baseballs from Score Board; and 2) they have solicited another retailer, Best, to achieve the same result. The damages Score Board alleges are lost profits, damage to customer relationships, loss of market share, and loss of good will. These elements together constitute a conspiracy claim that is likely to prevail.

For the reasons articulated, then, Score Board will probably prevail not only on its tortious interference claim, but also on its conspiracy claim. The first factor clearly favors the issuance of a preliminary injunction.

### b. *Irreparable Harm to Plaintiff Score Board if Injunctive Relief is Not Granted*

A movant's burden with regard to establishing irreparable harm is quite heavy. "More than a risk of irreparable harm must be demonstrated. The requisite for injunctive relief has been characterized as a 'clear showing of immediate irreparable injury,' or a 'presently existing actual threat; [an injunction] may not be used simply to eliminate a possibility of a remote future injury ...'" *Acierno v. New Castle County,* 40 F.3d 645, 655 (3d Cir.1994) (citations omitted) (quoting *Continental Group, Inc. v. Amoco Chemicals Corp.,* 614 F.2d 351, 358 (3d Cir.1980)).

■ Score Board contends that in the absence of a preliminary injunction, it will continue to suffer irreparable harm in the form of unquantifiable loss of good will and trade. It asserts that Upper Deck's solicitations of retailers for Griffey memorabilia deprives Score Board not only of profits from such items, but also of the business advantages that accrue to an exclusive licensee. "[T]he acts of UDA and UDC with respect to Service Merchandise and other similar types of

companies," Score Board's General Counsel states in an affidavit, "causes an erosion of Score Board's relationship with these companies" (Wujcik Aff. ¶ 17).

Score Board has met its burden of showing immediate irreparable harm. The record supports plaintiff's contentions regarding erosion of good will and trade, and such losses are well-established forms of irreparable harm in actions analogous to this licensing dispute. *Opticians Association of America v. Independent Opticians of America,* 920 F.2d 187, 195–97 (3d Cir.1990); *Telebrands Direct Response Corp. v. Ovation Communications, Inc.,* 802 F.Supp. 1169 (D.N.J.1992).[6]

### c. *Irreparable Harm to the Upper Deck Defendants if Injunctive Relief is Granted*

■ Score Board argues that neither UDC nor UDA will be harmed by the issuance of a preliminary injunction. The Court disagrees; it will inevitably harm UDC and UDA if they cannot sell Griffey items to Service Merchandise as they have been, or to other retailers. The balance of hardships clearly favors an injunction, however. Such relief will merely require UDC and UDA from honoring the Score Board Agreement as they should.

### d. *The Public Interest*

■ The entry of an injunction is clearly in the public interest, even though this is a private dispute. It will prevent one company from interfering with the legally protected contractual rights of another. Additionally, it will set a precedent that may deter similar interference in the future, particularly in a highly competitive sports memorabilia industry in which the contractual relationship is the coin of the realm.

### 2. PRELIMINARY INJUNCTION DETERMINATION

■ For the reasons stated above, the Court will issue a preliminary injunction barring defendants from selling Griffey auto-

---

**6.** The Court notes that *Upper Deck's* 1996 agreement with Griffey reserves to UDC the right to seek an injunction in the event of breach by Griffey, on the grounds that "his services are special, unique, unusual and extraordinary and cannot be replaced, and any breach by GRIFFEY of this Agreement will cause irreparable injury to UDC."

graphed items to television shopping networks, retail catalogue companies and retail stores, including but not limited to Best and Service Merchandise.

Pursuant to Rule 65(c) of the Federal Rules of Civil Procedure, the Court will order Score Board to post a $50,000 bond, for the payment of such costs and damages as may be incurred or suffered by Upper Deck in the event it is ultimately found to have been wrongfully enjoined. *Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 209–11 (3d Cir.1990). Although the parties have not addressed the issue of the proper amount of a bond, the Court determines that $50,000 is a reasonable amount in this case. *See Bascom Food Products Corp. v. Reese Finer Foods, Inc.*, 715 F.Supp. 616, 641 n. 31 (D.N.J.1989).

## B. SUMMARY JUDGMENT MOTION

### 1. STANDARD FOR SUMMARY JUDGMENT

The standard for granting summary judgment is a stringent one, but it is not insurmountable. A court may grant summary judgment only when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Serbin v. Bora Corp.*, 96 F.3d 66, 69 n. 2 (3d Cir.1996). In deciding whether there is a disputed issue of material fact, the court must grant all reasonable inferences from the evidence to the non-moving party. *Serbin* at 69 n. 2. The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

Supreme Court decisions mandate that a summary judgment motion must be granted unless the party opposing the motion "provides evidence 'such that a reasonable jury could return a verdict for the nonmoving party.'" *Lawrence v. Nat'l Westminster Bank New Jersey*, 98 F.3d 61, 65 (3d Cir. 1996) (quoting *Anderson* at 248, 106 S.Ct. at 2510). Moreover, once the moving party has carried its burden of establishing the absence of a genuine issue of material fact, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Rather, the non-moving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Serbin* at 69 n. 2 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)); *see also Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir.), *cert. denied*, 502 U.S. 940, 112 S.Ct. 376, 116 L.Ed.2d 327 (1991) (declaring that a non-movant may not "rest upon mere allegations, general denials, or ... vague statements"). Thus, if the non-movant's evidence is merely "colorable" or is "not significantly probative," the court may grant summary judgment. *Anderson* at 249–50, 106 S.Ct. at 2510–11.

### 2. SUMMARY JUDGMENT DETERMINATION

As the Court's preliminary injunction analysis makes clear, the record allows for a reasonable conclusion that defendants are liable for tortious interference and the tort of conspiracy. Accordingly, the Court denies defendants' summary judgment motion.

### C. MOTION TO DISMISS COUNTERCLAIM

Score Board requests that the Court dismiss portions of Upper Deck's counterclaim in this action because they are identical to Upper Deck claims against Score Board pending in the Southern District of California before the Hon. Barry Ted Moskowitz, United States District Judge.[7]

---

7. Score Board's motion with respect to the Upper Deck counterclaim formally seeks dismissal of the entire counterclaim. In the wake of subsequent developments, however, Score Board now

only seeks dismissal of portions of the counterclaim which are being heard in California.

Score Board's motion also formally includes a request for an order striking an affirmative de-

Upper Deck filed its counterclaim as part of its answer filed last summer. This counterclaim mirrored claims which Upper Deck had included in a proposed amended complaint in the California action. Last summer, Score Board served motion papers requesting that the Court dismiss this counterclaim in its entirety, and Upper Deck responded by asserting its broad right to file counterclaims, even if the Court would find them unrelated to Score Board's claims. Additionally, Upper Deck noted that it had not yet been given leave to file its amended complaint in the California action.

In October of last year, Judge Moskowitz granted Upper Deck leave to file its amended complaint.[8] In the wake of this decision, Score Board has withdrawn its motion to dismiss a claim regarding football star Dan Marino which is not being heard in California, as well as the portion of Upper Deck's counterclaim in this action involving Griffey. Score Board now simply seeks dismissal of all portions of the Upper Deck counterclaim that Judge Moskowitz is entertaining.

 In the interest of judicial economy, the Court will entertain only those portions of the counterclaim not being litigated in California. Accordingly, the counterclaim is dismissed without prejudice to Upper Deck's right to refile a counterclaim not including elements already being litigated before Judge Moskowitz. In other words, the new counterclaim may include claims involving Griffey and Dan Marino. There is strong caselaw establishing a Federal district court's discretion to dismiss a claim that is duplicative of another in a different Federal court. *Remington Rand Corp.-Delaware v. Business Systems Inc.,* 830 F.2d 1274, 1275–76 (3d Cir.1987); *Congress Credit Corp. v. AJC Internat'l, Inc.,* 42 F.3d 686, 689 (1st Cir.1994). Moreover, while a first-filed claim generally preempts others, a court can determine otherwise under special circumstances. *PRPJ Bergen, Inc. v. Plate,* 774 F.Supp. 200 (S.D.N.Y.1991).

### III. *CONCLUSION*

Plaintiff's motion for preliminary injunction is granted; defendants' motion for summary judgment is dismissed; and plaintiff's motion to dismiss the counterclaim and strike the affirmative defense of venue is granted insofar as the venue defense is struck and counterclaim is dismissed without prejudice to defendants' refiling.

The Court will enter an appropriate order.

### ORDER ON MOTIONS FOR PRELIMINARY INJUNCTION, SUMMARY JUDGMENT, AND DISMISSAL OF COUNTERCLAIM

Presently before the Court are: 1) an application by plaintiff for a preliminary injunction; 2) a motion by plaintiff for an order dismissing defendants' counterclaim and suppressing defendants' ninth affirmative defense of improper venue; and 3) a motion by defendants for summary judgment dismissing plaintiff's complaint;

The Court having considered the submissions of the parties, as well as the argument of counsel presented on January 30, 1997;

For the reasons stated in the Court's opinion of this date;

IT IS on this 10th day of March, 1997 hereby

ORDERED that:

1) Defendants Upper Deck Co. and Upper Deck Authenticated, Ltd. are hereby enjoined from selling and/or continuing to sell Ken Griffey Jr. autographed items to television shopping networks, retail catalogue companies and retail stores, including but not limited to Best Products, Inc. and Service Merchandise, Inc.;

2) As successful applicant for the preliminary injunction enumerated above, plaintiff The Score Board, Inc. must post a bond of $50,000 with the Clerk of

---

fense of improper venue included in Upper Deck's answer. Upper Deck noted at oral argument that it is no longer contesting venue, and the Court will strike this affirmative defense as requested.

**8.** At oral argument on the present motions, counsel advised this Court that Judge Moskowitz has scheduled trial for June 3 of this year.

the Court by Monday, March 17, 1997 at 12 noon;

3) Defendants' counterclaim is dismissed without prejudice to their refiling a counterclaim which excludes elements already being litigated in the Southern District of California;

4) Defendants' ninth affirmative defense of improper venue is struck; and

5) Defendants' motion for summary judgment is denied.