**CONGRESS CREDIT CORPORATION,**
Plaintiff,

v.

**AJC INTERNATIONAL,**
et al., Defendants.

**Civ. No. 90–1755 (HL).**

United States District Court,
D. Puerto Rico.

Sept. 12, 1995.

Ronald L. Rosenbaum, Woods, Rosenbaum, Luckeroth & Perez–Gonzalez, Hato Rey, PR, for Congress Credit Corporation.

Jose A. Pagan–Nieves, San Juan, PR, for Fronex Commodities, Inc.

Richard A. Lee, Richard A. Lee Law Offices, San Juan, PR, for AJC International, Inc.

## OPINION AND ORDER

LAFFITTE, District Judge.

On May 2, 1995, this Court issued an order to show cause pursuant to the First Circuit Court of Appeals decision in *Congress Credit Corp. v. AJC Int'l, Inc.,* 42 F.3d 686 (1st Cir.1994). This Court ordered the Trustee of the United Western of Puerto Rico, Inc. ("Trustee") estate and all other interested parties to show good cause why the adversary proceedings pending in the bankruptcy

court should not be dismissed. (*See* Dkt. No. 52.) In response, Congress Credit Corporation ("Congress") and the Trustee advised this Court to continue the adversary proceedings in federal court (*See* Dkt. Nos. 58, 59). AJC International, Inc. ("AJC") and Fronex Commodities, Inc. ("Fronex"), in contrast, supported the dismissal of the proceedings. (*See* Dkt. Nos. 60, 61.)

The issue before this Court is whether the adversary proceedings are a "benefit to the estate." *See* 11 U.S.C. § 550(a) (1993). Because this Court finds that, under the principles of the Bankruptcy Code, the adversary proceedings are not a benefit to the estate the following adversary proceedings are *dismissed with prejudice: United Western of P.R., Inc. v. Fronex Commodities, Inc.*, Adv. No. 90–0055A; and *United Western of P.R., Inc. v. A.J.C. Int'l, Inc.*, Adv. No. 90–0056A.

## BACKGROUND

The Plaintiff, Congress, filed a complaint on June 1, 1990 in federal district court against Fronex and AJC.[1] Congress alleges that it holds a recorded Factor's Lien and Assignment of Accounts Receivable on the inventory and proceeds of United Western of Puerto Rico, Inc. ("United Western"). Consequently, Congress claims that United Western's bulk transfers to Fronex and AJC violated the law of Puerto Rico. *See* P.R.Laws Ann. tit. 10 § 553 (1976).

Before Congress initiated this complaint in federal court, United Western filed a petition for bankruptcy and brought adversary proceedings against Fronex and AJC. Although United Western originally filed a petition for bankruptcy under Chapter 11 on March 2, 1990, this action was converted subsequently

---

**1.** Congress also named Agro International, Inc. as a defendant. However, Agro has since been liquidated and there is no adversary proceeding pending by United Western against Agro.

**2.** In the documents submitted to this Court and to the bankruptcy court, the Trustee and Congress state that they are seeking to avoid and to recover the preferential transfers citing 11 U.S.C. § 547 (1993). However, section 547 of the Bankruptcy Code is used by trustees or debtors-in-possession to avoid the preferential transfer. To recover the assets that are not under the estate's control, the trustee uses section 550 of the Bankruptcy Code. *See* 11 U.S.C. § 550

to Chapter 7. In its adversary proceedings, United Western alleged that Fronex and AJC received bulk transfers ninety days before United Western's bankruptcy. Accordingly, the Trustee of United Western's estate attempted to avoid the transfers under 11 U.S.C. § 547 (1993) and to recover the assets under 11 U.S.C. § 550 (1993).[2]

Immediately after United Western commenced these proceedings, Congress filed an adversary proceeding against United Western. Congress asserted a claim to the proceeds of the Trustee's preference actions. When the Trustee did not contest this claim, on February 11, 1992, the bankruptcy court entered judgment for Congress. As a result, if the Trustee is successful in avoiding and recovering the preferential transfers, the proceeds will be used to satisfy Congress' claims first. The remaining assets, if any, will go to United Western's estate.

On July 26, 1990, this Court stayed the proceedings in federal court pending the outcome of the preference actions in bankruptcy court. Initially, the First Circuit Court of Appeals affirmed this Court's decision. However, after further consideration, the First Circuit vacated the stay. *Congress Credit Corp. v. AJC Int'l, Inc.*, 42 F.3d 686, 691 (1st Cir.1994). It concluded that the adversary proceedings in bankruptcy court and Congress' cause of action in federal court were based on two different legal theories of recovery and, therefore, were not duplicative. *Id.* at 690. At the conclusion of its opinion, the First Circuit instructed this Court to determine whether the adversary proceedings should be dismissed or consolidated with Congress' action before this Court. *Id.* at 690–91.[3]

---

(1993); 2 David G. Epstein Et.Al., *Bankruptcy* § 6–80 (1992).

**3.** In a footnote, the First Circuit describe the issue presently before this Court. The Court stated that if United Western's estate has no funds and its business has been liquidated and if "the preference action cannot benefit the estate, there may be no point in having the trustee seek to recover the property all of which must be turned over to Congress Credit, with the inflation of legal fees that this might entail. On the other hand, there may be legitimate reasons justifying continuance of the preference actions. Sorting out and making the best provision for these reali-

## DISCUSSION

Before this Court is an issue of first impression in the First Circuit: Whether preference actions initiated by a trustee pursuant to a Chapter 7 bankruptcy petition will benefit the bankrupt party's estate when a secured creditor has a lien on all of the transferred assets. If the preference actions benefit the estate, the adversary proceedings would be consolidated with Congress' claims in federal court. However, if the preference actions do not benefit the estate, the adversary actions would be dismissed.

In this case, the Trustee of United Western's estate is seeking to avoid transfers of property from United Western to Fronex and AJC pursuant to section 547 of the Bankruptcy Code. Under this section, a preference is a pre-petition transfer of assets or money from the debtor to a creditor. See 11 U.S.C. § 547 (1993). The trustee is given the power to avoid this transfer and force the creditors to return the assets or money to the debtor's estate. Courts have attributed several purposes to this avoiding power: (1) It ensures equal treatment of creditors in the same class; (2) It prevents creditors from acquiring too many assets on the eve of bankruptcy; and (3) It increases cooperation among creditors by preventing a race to the courthouse to dismember the debtor. See 6 Daniel R. Cowans, *Bankruptcy Law and Practice* § 10.7(a) (1994); *In re Enserv Co., Inc.,* 64 B.R. 519, 520–21 (9th Cir. BAP 1986), *aff'd,* 813 F.2d 1230 (9th Cir.1987).

■ Only the trustee of the estate or the debtor-in-possession may bring an avoidance action under section 547. *See* 2 Daniel R. Cowans, *Bankruptcy Law and Practice* § 10.7(a) (1994); 4 Lawrence P. King, *Collier on Bankruptcy,* ¶ 547.21 (15th Ed.1994); *Louisiana State Sch. Lunch Employees Retirement Sys. v. Legel, Braswell Gov't Sec. Corp.,* 699 F.2d 512, 515 (11th Cir.1983); *In re Hoyos Precsas,* 73 B.R. 338, 339 (Bankr. D.P.R.1987). Consequently, Congress may not bring the adversary proceedings against Fronex and AJC without the help of the Trustee. Congress needs the Trustee to avoid and to recover the transferred property under the Code.

■ An "avoidance" of a transfer under section 547 is different from the "recovery" of the property under section 550. An avoidance nullifies the transfer. As a result, the transferred property becomes a part of the estate automatically. A recovery, on the other hand, forces the transferee to return the property or become personally liable for its value. *See* 2 David G. Epstein Et.Al., *Bankruptcy* § 6–79 (1992). When the property is subject to a creditor's lien or other interest and has not yet been transferred to a third party, an action for recovery is unnecessary. Through avoidance alone, the trustee holds the property free of the lien or other interest. *Id.* at § 6–80. In contrast, if the trustee does not have control over the property, the trustee must seek its recovery under section 550 of the Code. *Id.*

In the complaints filed with the bankruptcy court, United Western's Trustee never mentions section 550. The complaints against Fronex and AJC only state that the Trustee seeks to recover the property with its avoiding powers under section 547. (United Western Compls. against Fronex and AJC at 1.) However, as explained above, section 547 will nullify the transfers to Fronex and to AJC but it will not give the Trustee control over the assets. To recover the assets or to obtain control over the property, the Trustee must avoid the transfer first and then recover the property through section 550. Accordingly, to determine whether the preference actions are necessary, the Trustee must also meet the requirements of section 550.

■ Under section 550 of the Bankruptcy Code, the Trustee may recover the avoided transfer. *See* 11 U.S.C. § 550 (1993). Section 550 codifies *Moore v. Bay,* 284 U.S. 4, 52 S.Ct. 3, 76 L.Ed. 133 (1931) which held that all property recovered is for the benefit of the unsecured creditors. *See* 4 Lawrence P. King, *Collier on Bankruptcy,* ¶ 550.02 (15th Ed.1994). Undoubtedly, any recovery by a trustee must benefit the estate. The statute itself reads: "[T]o the extent that a transfer is avoided under section ... 547 ... of this

ties is something we leave to the district court on remand." *Congress,* 42 F.3d at 688, n. 3.

title, the trustee may recover, *for the benefit of the estate,* the property transferred, or, if the court so orders, the value of such property." 11 U.S.C. § 550(a) (1993) (emphasis added).[4]

■■■ Courts analyze whether the recovery will benefit the estate on a case by case basis. *See In re Pearson Indus., Inc.,* 178 B.R. 753 (Bankr.C.D.Ill.1995). In this analysis, there are three determinative factors: (1) whether the trustee is a Chapter 11 trustee or a Chapter 7 trustee; (2) whether the secured creditors have a claim to the assets recovered by the trustee; and (3) whether the unsecured creditors will benefit from the preference action.

The first factor, whether the trustee is a Chapter 11 trustee or a Chapter 7 trustee, is crucial. Although neither Congress, the Trustee, AJC, nor Fronex discuss its impact on this case, it has a significant effect on the outcome. In a Chapter 11 case, a business entity petitions the court for reorganization. *See* 1 David G. Epstein Et. Al., *Bankruptcy* § 1–9 (1992). Normally, the court permits the entity to operate its business and retain its assets under court supervision. *Id.* In exceptional circumstances, the entity is liquidated. *Id.* In contrast, the goal of a Chapter 7 proceeding is the liquidation of the entity. *Id.* at § 1–5. It involves the collection of the debtor's property, its conversion into cash, and its distribution to the creditors. *Id.* at §§ 1–5, 1–7.

Most importantly for this case, unlike a Chapter 11 trustee, a Chapter 7 trustee represents the interests of the unsecured creditors and *not* the secured creditors. *See In re Thompson,* 965 F.2d 1136, 1145 (1st Cir. 1992). As one court stated appropriately: '[I]t is a fundamental concept in bankruptcy that a trustee's primary duty is to the

unsecured creditors rather than to the secured creditors. The secured creditors, for the most part, should be able to look to their collateral for satisfaction of their claims. If there is no equity in the collateral for the bankruptcy estate or if the property is burdensome to the estate, the trustee generally abandons the property pursuant to 11 U.S.C. § 554(a)....' A Chapter 7 trustee should not act as a mere conduit for the benefit of secured creditors only.

*In re Pearson Indus., Inc.,* 178 B.R. 753, 761 (Bankr.C.D.Ill.1995) (quoting *In re Thu Viet Dinh,* 80 B.R. 819, 822 (Bankr.S.D.Miss. 1987)). The primary interest of United Western's Trustee is to safeguard the interests of the unsecured creditors. Congress, a secured creditor, may always look to the collateral to satisfy its claims.[5] In Congress' Response to the Order to Show Cause, Congress focuses most of its time and its attention on the second factor used to determine what is in the best interests of the estate. Congress emphasizes repeatedly that it has a legal right to the proceeds acquired by the Trustee in the adversary proceedings. (Pl. Resp. Order Show Cause at 2–3, 5–6; Suppl. I. at 2–6; Suppl. II. 1–8, 10–12.) Its right to acquire the proceeds, however, does not help Congress' claim that the adversary proceedings should continue. On the contrary, because Congress has a right to the proceeds and, in fact, has a judgment lien on the proceeds, it raises the question whether the unsecured creditors will benefit at all by these proceedings.

This leads to the third and final factor, whether the unsecured creditors of United Western's estate can recover any assets or money from the adversary proceedings. In this case, this is the dispositive factor in determining whether the preference actions are beneficial to the estate.

---

**4.** Even if United Western's Trustee only wishes to pursue a section 547 action to avoid the transfers, the Trustee still has a fiduciary duty to act in the best interests of the estate. *See In re Thompson,* 965 F.2d 1136, 1145 (1st Cir.1992); 11 U.S.C. § 704 (1993) (listing duties of trustee). The legislative history of section 704 governing the duties of the trustee indicates that the trustee represents the interests of unsecured creditors. *See* Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, Title II, ch. 5, § 704, 1978 U.S.C.C.A.N. (92 Stat.) 5787, 5879 ("If advisable, the trustee

must oppose the discharge of the debtor, *which is for the benefit of general unsecured creditors whom the trustee represents ")* (emphasis added).

**5.** Congress' cause of action in federal court is an example of how a secured creditor looks to the collateral to satisfy its claim. Before this Court, Congress claims that it has a lien under Puerto Rican law on the property acquired by Fronex and AJC.

An analysis of the complaints filed by United Western against Fronex and AJC demonstrates conclusively that the unsecured creditors will not benefit at all by the proceedings. In the case *United Western v. Fronex*, Adv. No. 90–0055A, United Western asks for relief in the amount of $81,178.80. In the case *United Western v. AJC*, Adv. No. 90–0056A, United Western asks for relief in the amount of $376,610.79. These are the exact same amounts to the very last penny that Congress is seeking from Fronex and AJC. (Congress Compl. in *Congress Credit Corp. v. United Western*, Adv. No. 90–0066A.) Therefore, any apparent recovery by the Trustee will go directly into the coffers of Congress.

Moreover, Congress has filed several documents with the bankruptcy court and the First Circuit Court of Appeals stating: "There is no estate and no funds and no chance that unsecured creditors will receive anything" (Motion in Regard to Order of Bankruptcy Court on August 25, 1994); and "There is no equity in the preference claims" (Congress Br. for Appeal, at 13, 14, 15).

The Trustee of United Western's estate drew the same conclusion in its September 1, 1994 "Statement of Position in Compliance with Order." In this document, the Trustee stated unequivocally:

> After a study of the matter, Trustee agrees with the Court that the preferential payments being reclaimed are the only assets of the estate, and that, since they are pledged to Congress Credit, their recovery will not be for the benefit of the unsecured creditors of the estate. There are no other realizable assets in the estate.

(Trustee Statement of Position in Compliance with Order at 1.) The Trustee's opinion that the unsecured creditors will not benefit from the preference actions is given substantial weight. It is the Chapter 7 trustee who has the fiduciary obligation to represent the interests of the unsecured creditors. In spite of this conclusion, the Trustee argued for continuing the adversary proceedings because Congress would fund the litigation and would receive all the benefits. This is not, however, an appropriate rationale for the continuation of these proceedings.

Congress refutes these prior statements by suggesting that they may be inaccurate. Congress states: "[T]hat there is no equity for the estate in the preference action is not presumably a certainty." (Pl.Resp. Order Show Cause at 4.) Congress suggests that there are supplemental proceedings underway to collect the judgments issued against Agro International, Inc. and Top Flight, Inc.. These additional proceedings, however, are irrelevant. The adversary proceedings of Fronex and AJC are at issue. Furthermore, all the proceeds recovered in the preference actions against Fronex and AJC will go to Congress. Whether or not the Trustee will be able to collect from these parties will not change the fact that Congress will be the sole beneficiary.

Finally, in a supplemental attachment to its Response to the Order to Show Cause, Congress alleges that there will be money left to the estate after the Trustee satisfies Congress' lien. (Pl.Resp. Order Show Cause, Suppl. II, at 9.) Congress states: "Congress' present claim is $562,459.60. while the total of the preference claims are $655,000.00 plus interest from January 1990." *Id.* Not only are these figures unexplained, these figures are not an accurate portrayal of the current adversary proceedings. At this time, there are only two adversary proceedings by United Western against the defendants. The total amount that United Western can receive is not $655,000.00 plus interest, but $457,789.59 plus interest. Again, this is the exact amount of money that Congress will take from United Western should the Trustee win a judgment against AJC and Fronex.

THEREFORE, the overwhelming evidence demonstrates that the adversary proceedings will not benefit the estate. The following adversary proceedings are hereby **dismissed with prejudice:** *United Western of P.R., Inc. v. Fronex Commodities, Inc.,* Adv. No. 90–0055A; and *United Western of P.R., Inc. v. A.J.C. Int'l, Inc.,* Adv. No. 90–0056A.

**IT IS SO ORDERED.**