In re FURR'S SUPERMARKETS, INC.,
a Delaware Corporation, Debtor.

Yvette J. Gonzales, Trustee,
Plaintiff–Appellee,

v.

Conagra Grocery Products Company
and Conagra Foods, Inc.,
Defendants–Appellants.

BAP No. NM–06–117.
Bankruptcy No. 7–01–1077–SA.
Adversary No. 02–01095–S.

United States Bankruptcy Appellate Panel
of the Tenth Circuit.

Aug. 15, 2007.

Michael T. Eversden of McGrath, North, Mullin & Kratz, PC LLO, Omaha, Nebraska (Robert J. Bothe and James J. Niemeier of McGrath, North, Mullin & Kratz, PC LLO, Omaha, NE, and Victor E. Carlin and Jocelyn Castillo of Moses, Dunn, Farmer, & Tuthill, PC, Albuquerque, NM,

with him on the brief) for Defendants–Appellants.

David T. Thuma (Robert H. Jacobvitz with him on the brief) of Jacobvitz, Thuma & Walker, P.C., Albuquerque, NM, for Plaintiff–Appellee.

Before MICHAEL, NUGENT, and BROWN, Bankruptcy Judges.

MICHAEL, Bankruptcy Judge.

ConAgra Grocery Products Company and ConAgra Foods, Inc. (collectively "ConAgra") appeal an order of the bankruptcy court avoiding preferential transfers made to them by Furr's Supermarkets, Inc. ("Debtor") and awarding prejudgment interest on the recovered amounts.[1] To describe the matter as hotly contested would be an understatement. ConAgra now asserts the bankruptcy court erred in a myriad of ways. For the reasons set forth below, we reject ConAgra's assertions of error and affirm the order of the bankruptcy court.

## I. BACKGROUND

Debtor filed its voluntary Chapter 11 bankruptcy case on February 8, 2001, and continued operating its retail supermarket business. However, the attempt at restructuring failed, and the case was converted to a case under Chapter 7 on December 19, 2001.[2] Between the time of initial filing of the petition and the time of conversion, the bankruptcy court entered a sale order pursuant to which Debtor sold the majority of its assets.[3] Because Debtor found itself without sufficient funds to carry out an organized wind-up of the Chapter 11 case, the bankruptcy court also approved post-sale borrowings, pursuant to which Debtor borrowed approximately $4.3 million.[4] The borrowed amount was secured, in part, by a lien on the bankruptcy estate's potential preference avoidance actions.[5]

Upon conversion, Yvette J. Gonzales ("Trustee") was appointed to serve as Chapter 7 trustee. Pursuant to 11 U.S.C. § 547(b),[6] Trustee filed this adversary proceeding on May 20, 2002, seeking to avoid transfers made by Debtor to ConAgra during the 90–day preference period, and to recover such amounts for the benefit of the estate pursuant to § 550(a).[7] The Trustee and secured lenders eventually entered into a court-approved settlement agreement that reduced the amount to be repaid to $2.3 million plus interest. Additionally, the settlement agreement provided that

---

1. See the bankruptcy court's published Memorandum Opinion in Support of Orders Denying Motions to Dismiss for Lack of Standing, *Gonzales v. Nabisco Div. of Kraft Foods, Inc. (In re Furrs)*, 294 B.R. 763 (Bankr.D.N.M. 2003). Several other creditors against whom the Trustee filed preference avoidance actions raised the same standing argument. Thus, the published decision applies in several unrelated adversary cases.

2. *Id.* at 767.

3. *Id.*

4. *Id.* The borrowed funds allowed Debtor to perform functions vital to the administration of its case, such as paying employees their final wages, issuing W–2s, administering the 401(k) and pension plans, and preparing tax returns.

5. *Id.*

6. Unless otherwise indicated, all future statutory references in text are to the Bankruptcy Code, Title 11 of the United States Code. Additionally, since this adversary action originated in 2002, all references are to the Code prior to its amendment by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA).

7. This is but one of many preference avoidance and recovery actions filed by Trustee in Debtor's case.

any proceeds from the avoidance actions would be used first to pay litigation costs, then 3% for the Trustee's commission, then split one-third to the estate and two-thirds to the secured lenders until the $2.3 million was repaid, with any remainder to go 100% to the estate.[8] Trustee estimated that the recoveries would be significantly more than the $2.3 million needed to repay the secured lenders.[9]

ConAgra moved to dismiss the proceeding, claiming Trustee did not have standing to bring this avoidance and recovery action because none of the recovered amounts would be paid to general unsecured creditors.[10] After considering both written and oral argument of the parties, the bankruptcy court found Trustee did have standing, denied ConAgra's motion, and allowed the adversary proceeding to proceed to trial.[11]

The parties stipulated to facts establishing Trustee's prima facie case under § 547(b). The issue of ConAgra's § 547(c)(1) new value defense was settled before trial. At trial, the main focus was on ConAgra's § 547(c)(2) ordinary course of business defense to the preferential transfers.[12] After hearing the testimony of many witnesses, observing their demeanor, weighing their credibility, and reviewing numerous exhibits, the bankruptcy court found that neither the subjective requirement of § 547(c)(2)(B), nor the objective requirement of § 547(c)(2)(C), were

satisfied, and that the transfers Debtor made were not in the ordinary course of business. Accordingly, the bankruptcy court entered money judgments against ConAgra together with prejudgment interest.[13] ConAgra now brings this timely appeal.

## II. APPELLATE JURISDICTION

This Court has jurisdiction to hear timely-filed appeals from "final judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit, unless one of the parties elects to have the district court hear the appeal.[14] Neither party elected to have this appeal heard by the United States District Court for the District of New Mexico. The parties have therefore consented to appellate review by this Court.

 A decision is considered final "if 'it ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'"[15] In this case, the order of the bankruptcy court concluded the preference avoidance and recovery action. Nothing remains for the bankruptcy court's consideration. Thus, the decision of the bankruptcy court is final for purposes of review.

## III. STANDARD OF REVIEW

 For purposes of standard of review, decisions by trial courts are traditionally divided into three categories, de-

**8.** *In re Furrs,* 294 B.R. at 767.

**9.** *Id.* at 768.

**10.** *Id.* at 766.

**11.** *Id.*

**12.** *See Memorandum Opinion in Support of Judgment After Trial ("Judgment Memorandum Opinion")* at 32–33, *in* Appellants' App. Vol. 9 at 2673–74.

**13.** *See Judgment for Plaintiff* at 1, *in* Appellants' App. Vol. 9 at 2691.

**14.** 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed. R. Bankr.P. 8002; 10th Cir. BAP L.R. 8001–1(a) & (d).

**15.** *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 712, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) (quoting *Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945)).

nominated: 1) questions of law, which are reviewable *de novo;* 2) questions of fact, which are reviewable for clear error; and, 3) matters of discretion, which are reviewable for abuse of discretion.[16] *De novo* review requires an independent determination of the issues, giving no special weight to the bankruptcy court's decision.[17] A factual finding is "clearly erroneous" when " 'it is without factual support in the record, or if the appellate court, after reviewing all the evidence, is left with the definite and firm conviction that a mistake has been made.' " [18] "Under the abuse of discretion standard[,] 'a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.' " [19] The standard of review applicable to each error alleged by ConAgra will be identified below on an issue-by-issue basis.

## IV. ISSUES ON APPEAL

ConAgra raises seven allegations of error.

**Issue A:** Did the bankruptcy court err in holding that Trustee has standing to bring this preference avoidance and recovery action under §§ 547 and 550 when none of the recovered funds would be paid to the general unsecured creditors?

**Issue B:** Did the bankruptcy court err in finding that Walter Doyle, former president of Debtor, was qualified as an expert witness,

and in admitting his testimony and reports?

**Issue C:** Did the bankruptcy court err in admitting the testimony of Rachel Kefauver, an accounting manager formerly employed by Debtor, and the exhibits she prepared?

**Issue D:** Did the bankruptcy court err in determining ConAgra failed to establish its ordinary course of business defense to the preference claims because the payments by Debtor to ConAgra were not made in the ordinary course of dealing between the parties?

**Issue E:** Did the bankruptcy court err in determining ConAgra failed to establish its ordinary course of business defense to the preference claims because the payments by Debtor to ConAgra were not made according to the ordinary business terms used in the grocery industry?

**Issue F:** Did the bankruptcy court err in giving ConAgra credit for its new value defense before analyzing its ordinary course of business defense?

**Issue G:** Did the bankruptcy court err in awarding Trustee prejudgment interest on the recovered amounts?

ConAgra takes the position that the decision of the bankruptcy court should be reversed, and this matter remanded with

---

16. *Pierce v. Underwood,* 487 U.S. 552, 558, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). *See* Fed. R. Bankr.P. 8013; *Fowler Bros. v. Young (In re Young),* 91 F.3d 1367, 1370 (10th Cir. 1996).

17. *Salve Regina Coll. v. Russell,* 499 U.S. 225, 238, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991).

18. *Las Vegas Ice & Cold Storage Co. v. Far W. Bank,* 893 F.2d 1182, 1185 (10th Cir.1990) (quoting *LeMaire ex rel. LeMaire v. United States,* 826 F.2d 949, 953 (10th Cir.1987)).

19. *Moothart v. Bell,* 21 F.3d 1499, 1504 (10th Cir.1994) (quoting *McEwen v. City of Norman,* 926 F.2d 1539, 1553–54 (10th Cir.1991)).

instructions to dismiss the adversary proceeding with prejudice.

## V. ANALYSIS

### A. *Standing of Trustee*

The bankruptcy court held that Trustee had standing to bring this preference avoidance and recovery action under §§ 547 and 550.[20] ConAgra alleges the bankruptcy court erred in so holding, because none of the recovered amounts will be paid to the general unsecured creditors.

#### 1. *Standard of Review*

■ The issue of standing presents a legal question.[21] Legal questions are reviewed *de novo*.[22]

#### 2. *Discussion*

■ There is no dispute that any monies Trustee recovers in this adversary proceeding will be paid either to secured creditors or to administrative claimants.[23] None of the money will find its way into the hands of general unsecured creditors. We agree with the bankruptcy court that an action which will generate funds for the payment of administrative claims such as these is a proper use of Trustee's avoiding and recovery powers.[24]

■ Section 550 permits a trustee to recover the property that is the subject of a transfer avoided under § 547 "for the benefit of the estate." The determination of whether a recovery would benefit the estate is done on a case-by-case basis.[25] ConAgra asserts the phrase "benefit of the estate" in § 550 is the equivalent of "payment to general unsecured creditors." We reject the argument that these two phrases are synonymous. The phrase "benefit of the estate" is to be interpreted much more broadly.[26]

---

**20.** 11 U.S.C. § 547(b) provides in pertinent part:

> Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made—
> (A) on or within 90 days before the date of the filing of the petition . . .
> (5) that enables such creditor to receive more than such creditor would receive if—
> (A) the case were a case under chapter 7 of this title;
> (B) the transfer had not been made; and
> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 550(a) provides in pertinent part:

> (a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property[.]

**21.** *Lippoldt v. Cole*, 468 F.3d 1204, 1216 (10th Cir.2006).

**22.** *Pierce v. Underwood*, 487 U.S. 552, 558, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988).

**23.** *Gonzales v. Nabisco Div. of Kraft Foods, Inc. (In re Furrs)*, 294 B.R. 763, 768 (Bankr. D.N.M.2003).

**24.** In its *Memorandum Opinion in Support of Orders Denying Motions to Dismiss for Lack of Standing*, the bankruptcy court provides a very thorough and detailed analysis of the standing issue which need not be repeated in detail here. *Id.*

**25.** *In re Sweetwater*, 884 F.2d 1323, 1326–27 (10th Cir.1989).

**26.** 5 *Collier on Bankruptcy* ¶ 550.02[2] at 550–7 (Alan N. Resnick ed. 15th ed. rev. 2007) ("If the recovery will have some positive benefit to the estate or its creditors, however, recovery may be had even if such benefit is indirect.").

ConAgra relies heavily on *Congress Credit Corp. v. AJC International ("Congress")*[27] to support its argument that Trustee lacks standing. The issue in that case was "[w]hether preference actions initiated by a trustee pursuant to a Chapter 7 bankruptcy petition will benefit the bankrupt party's estate when a secured creditor has a lien on all of the transferred assets."[28] The bankruptcy court held they would not benefit the estate, and therefore, dismissed the actions. However, the facts of *Congress* differ from the facts of this case in at least two important respects.

First, the secured creditors' interests in these two cases are significantly different. In *Congress*, the secured creditor had a prepetition "Factor's Lien and Assignment of Accounts Receivable on the inventory and proceeds of [debtor]."[29] In this case, the secured creditors have a lien on the estate's avoidance actions resulting from postpetition lending to Debtor while in Chapter 11 status. The borrowed funds allowed Debtor to perform functions vital to the administration of its case, such as paying employees their final wages, issuing W–2s, administering the 401(k) and pension plans, and preparing tax returns.[30]

Second, and more importantly, in *Congress*, the trustee's avoidance action sought to recover the exact amount of the secured creditor's claim.[31] Therefore, it was easy for the court to characterize the trustee as acting "as a mere conduit for the benefit of secured creditors only."[32] Here, the recovery from the avoidance actions will first pay the litigation costs and Trustee's commissions, and then be divided one-third to the estate and two-thirds to the secured creditors. After the secured creditors receive payment in full of their claim, 100% of the recovery will go to the estate. The Trustee estimates there will be significant recoveries beyond what is needed to repay the secured lenders.[33] The amount received by the estate will be used to pay Chapter 7 and Chapter 11 administrative claims.[34]

While the administrative claimants may not be prepetition unsecured, nonpriority creditors, they are nonetheless unsecured creditors that will benefit directly from Trustee's avoidance and recovery actions. This constitutes a "benefit to the estate."[35] As stated by the Court of Appeals for the Seventh Circuit, "[s]ection 550(a) speaks of benefit to *the estate*—which in bankruptcy parlance denotes the set of all potentially interested parties—rather than to any particular class of creditors."[36] Because the recoveries will benefit the estate, the bankruptcy court did not err in finding that Trustee has standing to bring this adversary action to recover any preferential transfers made by Debtor to ConAgra.

---

27. 186 B.R. 555 (D.P.R.1995).

28. *Id.* at 558.

29. *Id.* at 557.

30. *In re Furrs,* 294 B.R. at 767.

31. *Congress,* 186 B.R. at 560.

32. *Id.* at 559 (citing *Barber v. McCord Auto Supply (In re Pearson Indus. Inc.),* 178 B.R. 753, 761 (Bankr.C.D.Ill.1995)).

33. *In re Furrs,* 294 B.R. at 767–68.

34. *Id.* at 768.

35. *In re Sweetwater,* 884 F.2d 1323, 1327 (10th Cir.1989) (avoidance actions permitted when recovery will benefit the estate's unsecured administrative creditors).

36. *Mellon Bank, N.A. v. Dick Corp.,* 351 F.3d 290, 293 (7th Cir.2003) (emphasis in original).

## B. Admission of Doyle Expert Witness Testimony

At trial, Trustee offered the testimony of Walter Doyle ("Doyle") as an expert witness on the subject of ordinary business terms between grocery retailers and their vendors. On appeal, ConAgra alleges the bankruptcy court erred in finding that Doyle was qualified as an expert witness, and in admitting his testimony and reports.

### 1. Standard of Review

A trial court has wide discretion in determining whether a witness is competent to testify as an expert.[37] A trial court's decision to qualify a witness as an expert will only be set aside if clearly erroneous.[38]

### 2. Discussion

ConAgra argues that Doyle, former president of Debtor, was not qualified as an expert witness and should not have been allowed to testify at trial. Specifically, ConAgra alleges that Doyle did not have the proper qualifications, that his testimony was not sufficiently reliable when considered as expert testimony, and that his testimony would not be admissible on any other grounds.[39] We disagree.

A professional education is not required in order to qualify as an expert. Work experience can be a sufficient basis for an expert's testimony.[40] The breadth and length of Doyle's work experience in the grocery industry is more than ample to qualify him as an expert with respect to the matters on which he testified. Doyle has more than thirty-four years experience in the grocery business. He was employed by Albertsons Supermarkets for twenty-one years as a clerk, department manager, assistant store manager, store manager, assistant sales manager, and ultimately as a multi-department sales manager responsible for between thirty-two and sixty stores. Doyle was then employed by Lowes Foods for three and one-half years in the position of vice president of sales and merchandising for seventy supermarkets and twenty-one convenience stores. Most recently, Doyle was employed by Debtor for nine and one-half years in the positions of vice president of sales and merchandising, senior vice president, executive vice president, and finally, president.

Over his long career, Doyle's duties included negotiation of sales terms with vendors with respect to grocery and non-grocery items, including virtually all store departments and types of products. He negotiated with both warehouse and direct store vendors, and eventually supervised

---

37. *Palmacci v. Umpierrez,* 121 F.3d 781, 792 (1st Cir.1997); *Randolph v. Collectramatic, Inc.,* 590 F.2d 844, 848 (10th Cir.1979).

38. *Kieffer v. Weston Land, Inc.,* 90 F.3d 1496, 1499 (10th Cir.1996); *Orth v. Emerson Elec. Co. White–Rodgers Div.,* 980 F.2d 632, 637 (10th Cir.1992); *Garbincius v. Boston Edison Co.,* 621 F.2d 1171, 1174 (1st Cir.1980); *Dixon v. Int'l Harvester Co.,* 754 F.2d 573, 580 (5th Cir.1985).

39. Federal Rule of Evidence 702, Testimony by Experts, made applicable to bankruptcy cases by Federal Rule of Bankruptcy Procedure 9017, provides as follows:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

40. *S. Cement Co. v. Sproul,* 378 F.2d 48, 49 (5th Cir.1967); *Gardner v. Gen. Motors Corp.,* 507 F.2d 525, 528 (10th Cir.1974).

other store employees in the negotiation of such items. The terms Doyle negotiated included product price, payment terms, shelf space, and promotional activities. In his career, Doyle had limited involvement with negotiating credit limits, primarily because credit limits had rarely become an issue between a grocery store and a supplier. He did, however, recall two instances when Debtor had an issue with purchasing items and reaching its credit limit. He testified that in both situations, the problem was resolved by increasing the credit limit.

ConAgra's primary argument focuses upon the fact that all of Doyle's employment experience was as a grocery retailer. ConAgra argues that because Doyle never worked for a grocery supplier, such as ConAgra, he should not be allowed to offer an opinion regarding the credit practices between a grocery store and a grocery supplier. The argument lacks merit. Imposing a requirement that Doyle must have worked on both sides of grocery transactions in order to qualify as an expert witness would be overly stringent.

ConAgra also asserts Doyle should not have been allowed to testify as an expert because he had limited experience with negotiating credit limits. The bankruptcy court found his testimony to be informative in that it illustrated how credit limits are rarely a problem between financially healthy grocery retailers and their ven-

dors. Doyle had vast experience in the grocery industry, and his testimony was, no doubt, helpful to the bankruptcy court,[41] which is all that is required under the plain language of Rule 702.[42]

We can only set aside the bankruptcy court's qualification of Doyle as an expert witness if such qualification was clearly erroneous. Doyle was more than qualified to offer the opinions he offered. To the extent ConAgra has any argument regarding Doyle's lack of expertise in any specific area of the grocery business, it goes to the weight to be given to the testimony, not its admissibility.[43] The decision to qualify Doyle as an expert witness, and to admit his testimony and reports, was not clearly erroneous.

### C. Admission of Kefauver Testimony and Exhibits

For purposes of providing summaries of Debtor's business records, Trustee offered the testimony of and exhibits prepared by Rachel Kefauver ("Kefauver"), who was formerly employed by Debtor as a financial accounting manager. Kefauver was also engaged as a consultant by Trustee after Debtor filed bankruptcy.[44] ConAgra alleges the bankruptcy court erred in admitting the testimony of Kefauver, and the exhibits she prepared.

#### 1. Standard of Review

■ "The decision to admit or exclude evidence is within the sound discretion of

---

**41.** *Order Permitting Walter Doyle to Testify as an Expert Witness and Admitting his Written Reports* at 2, *in* Appellants' App. Vol. 9 at 2556 ("The Court further finds that Mr. Doyle's broad experience in a variety of different positions with a variety of retailers has provided him with an expertise that allows him to address the specifics of these circumstances, which, the Court finds, he has done.").

**42.** *See supra* n.39.

**43.** *Robinson v. GEICO Gen. Ins. Co.,* 447 F.3d 1096, 1100 (8th Cir.2006) (quoting 29 Charles Alan Wright and Victor James Gold, *Federal Practice and Procedure, Evidence,* § 6265 (1997)).

**44.** *Transcript of Proceedings held November 5, 2003,* at 25 *ll.* 21–24, *in* Appellants' App. Vol. 7 at 1899. (She was engaged "to do the books again, to manage staff and to prepare bankruptcy schedules as needed and anything else that management needed done.").

the [trial] court, and, on appeal, reviewable only for an abuse of discretion." [45]

## 2. *Discussion*

■ ConAgra contends the bankruptcy court erred in admitting Kefauver's testimony and exhibits for two reasons. First, ConAgra claims she did not have personal knowledge with respect to the matters about which she testified. Second, ConAgra asserts that Kefauver was neither listed as or qualified to act as an expert witness, but that her testimony was in fact the testimony of an expert. Trustee responds that Kefauver's exhibits were admissible under the business records exception to the hearsay rule. Trustee further contends that Kefauver did not testify as an expert, did not offer an expert opinion, and to the extent she summarized evidence, the summary was in the nature of simple mathematics offered to assist the bankruptcy court. Trustee also argues that to the extent Kefauver presented charts summarizing the Debtor/ConAgra relationship, all of the documentary evidence she relied upon was properly admitted into evidence, and the charts she prepared were admissible summaries of voluminous evidence. We agree with Trustee.

■ Both case law and scholarly authority serve to support the proposition that it does not take an expert to create graphs and summarize data.[46] In *United States v. Lemire*,[47] the government requested that James Kasper ("Kasper"), an FBI agent and certified public accountant, be allowed to summarize the evidence about the complex cash flow through offshore companies that the government had already introduced during direct examination of its witnesses.[48] Kasper used summary charts to review this evidence in a more organized fashion. To present his summary, he relied on a large number of letters, invoices and bank drafts, in addition to the testimony of numerous witnesses already in evidence. The defendants objected to Kasper's testimony, claiming that he was an improper expert witness. After conducting a voir dire examination, the district court ruled that Kasper would be allowed to testify, subject to limiting instructions that his testimony was explanatory and was not itself substantive evidence.[49]

On appeal, the defendants renewed the objection that had been overruled by the district court. The defendants contended that admitting the testimony of a non-expert summary witness was improper under Federal Rule of Evidence 602.[50] Both the district and circuit courts ruled to the contrary. They found that because its purpose is to assure reliability, Rule 602 prohibits non-experts from testifying unless they have personal knowledge as to

---

**45.** *Fox v. Mazda Corp. of Am.*, 868 F.2d 1190, 1194 (10th Cir.1989).

**46.** *United States v. Lemire*, 720 F.2d 1327, 1346–1347 (D.C.Cir.1983); 27 Charles Alan Wright and Victor James Gold, *Federal Practice and Procedure, Evidence*, § 6026 at 229 (2007) (footnote omitted).

**47.** 720 F.2d 1327 (D.C.Cir.1983).

**48.** *Id.* at 1346–47.

**49.** *Id.*

**50.** Federal Rule of Evidence 602 provides as follows:

> A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the witness' own testimony. This rule is subject to the provisions of rule 703, relating to opinion testimony by expert witnesses.

the matters on which they testify.[51] The court determined that in this case, there was no violation of either Rule 602's literal language or its overriding purpose. Kasper only summarized evidence about cash flows that several prior witnesses had already offered; he did not testify about any of the events underlying the trial. As to the cash flow evidence, he testified from his personal knowledge of the exhibits and transcripts.

The record establishes that Kefauver took information from Debtor's business records, and organized the information using a spreadsheet format to assist the bankruptcy court. Kefauver did not interpret the data she summarized, and offered no opinion on the ultimate issue before the court, i.e., whether ConAgra had a valid ordinary course of business defense to the preference action brought by the Trustee. We conclude that Kefauver did not testify as an expert witness.

In Volume 27 of their treatise, *Federal Practice and Procedure, Evidence*, Wright and Gold explain the concept of testimony by a "summary witness." The "summary witness" is an example of a personal knowledge problem associated with hearsay that is given special treatment by the courts.[52] The term "summary witness" may be used in various contexts, but is most often a reference to a witness who is called to testify as to voluminous data compiled by others under his or her supervision. A "summary witness" is ordinarily allowed to testify.[53]

In this case, although she was familiar with Debtor's accounting and record keeping systems, Kefauver may have testified to some matters outside of her personal knowledge. However, to the extent the charts prepared by Kefauver included information outside of her knowledge, the information was based on Debtor's business records which had been received into evidence under the business records exception to the hearsay rule, or were matters of record in the case (e.g., the date the bankruptcy case was filed and the corresponding preference period). As a result, there are no Rule 602 reliability concerns here. Under these circumstances, Kefauver acted as a permissible summary witness. The bankruptcy court was well within its discretion in admitting the testimony of Kefauver and the exhibits she prepared.

### D. Ordinary Course of Dealing Between the Parties

The parties stipulated to facts establishing Trustee's prima facie preference avoidance case under § 547(b), and ConAgra then raised the affirmative ordinary course of business defense pursuant to § 547(c)(2).[54] The bankruptcy court deter-

---

**51.** *Id. See also* Fed.R.Evid. 602 advisory committee's note.

**52.** 27 Charles Alan Wright and Victor James Gold, *Federal Practice and Procedure, Evidence,* § 6026 at 229 (2007) (footnote omitted).

**53.** *Id.* Additionally, many courts analogize the summary witness testimony to the presentation of summary exhibits of voluminous evidence under Federal Rule of Evidence 1006. *Id.*

**54.** 11 U.S.C. § 547(c)(2) provides as follows:

(c) The trustee may not avoid under this section a transfer—

. . .

(2) to the extent that such transfer was—
(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;
(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and
(C) made according to ordinary business terms[.]

mined that ConAgra failed to meet its burden of establishing the ordinary course of business defense because the transfers from Debtor to ConAgra were not made in the ordinary course of dealing between the parties as required by § 547(c)(2)(B).

### 1. *Standard of Review*

 Findings under § 547(c)(2)(B) & (C) are considered factual and are, therefore, subject to the clearly erroneous standard of review.[55]

### 2. *Discussion*

The bankruptcy court found that the requirement of § 547(c)(2)(B), that the transfers were made in the ordinary course of dealing between the parties, i.e., the "subjective test," was not met.[56] ConAgra argues the bankruptcy court erred in focusing on Debtor's internal irregularities (holding checks, daily meetings of management regarding which supplier to pay, etc.) instead of looking at "whether activities that were apparent to both [Debtor] and [ConAgra] were ordinary as between them."[57] ConAgra also avers the bankruptcy court erred in requiring ConAgra to provide evidence regarding the relationship between Debtor and ConAgra in a period "well before the preference period,"[58] and by misapplying the factors for the ordinary course of business defense outlined in *In re Sunset Sales.*[59]

 The United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") has stated that the ordinary course of business defense should be narrowly construed.[60] It has also stated that "[t]he purpose of the [ordinary course of business defense] is to leave undisturbed *normal financial relations,* because doing so does not detract from the general policy of the preference section to discourage unusual action by either the debtor or his creditors during the debtor's slide into bankruptcy."[61] We are not free to depart from rulings entered by the Tenth Circuit. Additionally, the transfers should be ordinary both from the transferee's perspective and the debtor's perspective.[62]

 This Court has previously held that the four primary factors courts should examine to determine if payments are ordinary between the parties as required under the subjective test of § 547(c)(2)(B) are as follows:

(1) the length of time the parties were engaged in the transaction in issue; (2) whether the amount or form of tender differed from past practices; (3) whether the debtor or creditor engaged in any unusual collection or payment activity; and (4) the circumstances under which the payment was made.[63]

**55.** *Clark v. Balcor Real Estate Fin., Inc. (In re Meridith Hoffman Partners),* 12 F.3d 1549, 1553 (10th Cir.1993); *Payne v. Clarendon Nat'l Ins. Co. (In re Sunset Sales),* 220 B.R. 1005, 1020 (10th Cir. BAP 1998).

**56.** *Judgment Memorandum Opinion* at 37, *in* Appellants' App. Vol. 9 at 2678. *See In re Sunset Sales, Inc.,* 220 B.R. at 1020 ("Subsection (B) of this section creates a subjective test, i.e., whether the transfers were ordinary as between the parties, and subsection (C) creates an objective test, i.e., whether the transfers were ordinary in the industry.").

**57.** Appellants' Br. at 29.

**58.** *Id.* at 30 (internal quotation marks omitted).

**59.** 220 B.R. 1005 (10th Cir. BAP 1998).

**60.** *Jobin v. McKay (In re M & L Bus. Mach. Co.),* 84 F.3d 1330, 1339 (10th Cir.1996).

**61.** *In re Hedged–Invs. Assocs., Inc.,* 48 F.3d 470, 475 (10th Cir.1995) (emphasis added).

**62.** *In re Milwaukee Cheese Wis., Inc.,* 112 F.3d 845, 848 (7th Cir.1997).

**63.** *In re Sunset Sales, Inc.,* 220 B.R. at 1020–21.

Although there are four factors, courts often focus "upon one of these factors and any significant alteration in any one of the factors may be sufficient to conclude that a payment was made outside the ordinary course of business." [64] Here, the primary focus is on the third factor, and thus the questions to ask are whether the bankruptcy court erred in finding that Debtor engaged in unusual payment activity and ConAgra engaged in unusual collection activity. The record amply supports the conclusion of the bankruptcy court.

 In order to perform the subjective test of § 547(c)(2)(B),

[t]he relations of the debtor and the creditor are placed in a vacuum, and the transfer in question is assessed for its consistency with those relations. What is subjectively ordinary between the parties is answered from comparing and contrasting the timing, amount, manner and circumstances of the transaction against the backdrop of the parties' traditional dealings. The transaction is scrutinized for anything unusual or different.[65]

Further, the entire course of dealing between the parties is generally to be considered.[66]

The transfers and financial transactions between Debtor and ConAgra during the 90–day preference period were anything but "normal" or "ordinary," from either party's perspective. All of the experts who testified agreed that Debtor's payment practices during the preference period were not ordinary. Specifically, Debtor

was holding checks, then voiding and reissuing them at later dates, having daily meetings to determine which vendors to pay, paying ConAgra's invoices late, and sending payments by Federal Express. The record also supports the finding that ConAgra's collection efforts with respect to Debtor were outside the bounds of ordinary. The testimony was that ConAgra constantly contacted Debtor through its agents for payment of specific invoices, placed Debtor on credit hold, and withheld current orders until past due invoices were paid. We are unable to conclude that the bankruptcy court's findings that the payments made by Debtor to ConAgra were not in the ordinary course of business were clearly erroneous.

### E. Ordinary Business Terms in the Industry

The bankruptcy court also determined that ConAgra failed to establish a defense to the preference claims because the payments by Debtor to ConAgra were not made according to ordinary business terms in the industry. On appeal, ConAgra argues that it "believe[s] the standard the Court used to be erroneous and unwarranted by the statutory language, and that the Court's application of law to the facts of this case is clearly erroneous." [67]

#### 1. Standard of Review

 Findings under § 547(c)(2)(B) & (C) are considered factual and are, therefore, subject to the clearly erroneous standard of review.[68] Interpretation of the

---

**64.** *In re Laclede Steel Co.*, 271 B.R. 127, 132 (8th Cir.BAP), *aff'd*, 47 Fed.Appx. 784 (8th Cir.2002).

**65.** *Morris v. Kan. Drywall Supply Co. (In re Classic Drywall, Inc.)*, 121 B.R. 69, 75 (D.Kan.1990) (citations omitted).

**66.** *Brown v. Shell Canada Ltd. (In re Tenn. Chem. Co.)*, 112 F.3d 234, 237 (6th Cir.1997).

**67.** Appellants' Br. at 38.

**68.** *Clark v. Balcor Real Estate Fin., Inc. (In re Meridith Hoffman Partners)*, 12 F.3d 1549, 1553 (10th Cir.1993); *In re Sunset Sales*, 220 B.R. at 1020.

statutory language itself presents a legal question. Legal questions are reviewed under the *de novo* standard.[69]

### 2. *Discussion*

To establish the ordinary course of business defense, a transfer must, in addition to meeting the "subjective" test of § 547(c)(2)(B), also meet the "objective" or "industry" test of § 547(c)(2)(C). The objective test requires that the transfers were "made according to ordinary business terms."[70] The Tenth Circuit has interpreted the objective requirement to mean that courts must determine whether the payments were made under terms that creditors use when debtors are *financially healthy.*[71] ConAgra asserts the Tenth Circuit's standard is an erroneous interpretation of the statutory language, and therefore the bankruptcy court should not have applied it in this case. ConAgra argues the phrase "ordinary business terms" should mean "the range of terms that encompasses the practices in which firms similar in some general way to the creditor in question engage, and that only dealings so idiosyncratic as to fall outside that broad range should be deemed extraordinary and therefore outside the scope of subsection (C)."[72] While it is true that other circuit courts have interpreted the § 547(c)(2)(C) requirement

more broadly,[73] this Court is compelled to follow the precedent of the Tenth Circuit.[74] It does not have the authority to ignore or overrule such precedent. ConAgra's argument must be rejected because it is contrary to controlling Tenth Circuit law.

### F. *Order of Analyzing and Applying ConAgra's Defenses*

The bankruptcy court gave ConAgra credit for its new value defense under § 547(c)(1) before giving ConAgra the opportunity to prove its alleged ordinary course of business defense under § 547(c)(2). ConAgra claims the bankruptcy court erred in not analyzing the ordinary course of business defense prior to immunizing certain transfers as a result of subsequent new value given.

### 1. *Standard of Review*

Interpreting and determining the order of the application of the defenses in § 547(c)(1) & (2) involve legal questions. The standard of review is *de novo.*[75]

### 2. *Discussion*

ConAgra argues that because the bankruptcy court gave credit for new value given against the earliest alleged preferential transfers before analyzing the ordinary course of business defense, it took an approach that effectively minimized the posi-

---

**69.** *Pierce v. Underwood,* 487 U.S. 552, 558, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988).

**70.** 11 U.S.C. § 547(c)(2)(C).

**71.** *In re Meridith Hoffman Partners,* 12 F.3d at 1553 ("Ordinary business terms therefore are those used in 'normal financing relations': the kinds of terms that creditors and debtors use in ordinary circumstances, when debtors are healthy.").

**72.** Appellants' Br. at 38 (quoting *In re Tolona Pizza Prods. Corp.,* 3 F.3d 1029, 1033 (7th Cir.1993) (emphasis omitted)).

**73.** *See, e.g., Lawson v. Ford Motor Co. (In re Roblin Indus., Inc.),* 78 F.3d 30, 39–40 (2d Cir.1996); *Jones v. United Sav. & Loan Ass'n (In re U.S.A. Inns of Eureka Springs, Ark., Inc.),* 9 F.3d 680, 685–86 (8th Cir.1993); *In re Tolona Pizza Prods. Corp.,* 3 F.3d at 1033.

**74.** We are not suggesting that the decision in *Meridith Hoffman Partners* is incorrect, and any inference to that effect would be inappropriate. We merely note that we are bound by controlling precedent.

**75.** *Pierce v. Underwood,* 487 U.S. 552, 558, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988).

tive effect of its defenses. ConAgra asserts that the defenses under § 547(c) are cumulative, not exclusive, and a party may use two or more in concert with one another to avoid liability associated with individual payments.[76] In other words, ConAgra insists the ordinary course of business defense must be applied before the new value defense, because it is entitled to the maximum effect of the defenses.[77]

We understand the logic of ConAgra's argument and do not deny that ConAgra is entitled to "the maximum effect of the defenses." However, we cannot say the bankruptcy court's method of analyzing the defenses was error. Even though the bankruptcy court first gave credit for new value and then focused only on transfers made on or after December 6, 2000, ConAgra was unable to factually establish the ordinary course of business defense for any part of the 90–day preference period.[78] As a result of ConAgra's failure to establish an ordinary course of business defense, the issue of which defense to apply and in what order to apply them failed to materialize.

### G. Prejudgment Interest

The bankruptcy court awarded Trustee prejudgment interest on the preferential amounts recovered from the date of the complaint initiating this avoidance action (May 20, 2002) to the date of entry of judgment (October 13, 2006) at the rate of 2.4% per annum.[79] ConAgra asserts the bankruptcy court erred in making such award. ConAgra's argument seems to be based at least in part upon a belief that an award of prejudgment interest is punitive in nature.

### 1. Standard of Review

An award of prejudgment interest is a matter left to the discretion of the trial court, and is reviewed for abuse of that discretion.[80]

### 2. Discussion

ConAgra argues the bankruptcy court should not have awarded prejudgment interest because ConAgra had a good-faith defense to the preference action, and the amounts claimed by Trustee were unliquidated prior to judgment. ConAgra also asserts that since it was not responsible for the three year delay in ruling on this matter, it should not be forced to pay prejudgment interest.

In bankruptcy proceedings, courts traditionally award prejudgment interest to trustees who successfully avoid preferential or fraudulent transfers from the time demand is made or an adversary proceeding is filed, unless the contested amount is undetermined prior to the bankruptcy court's judgment.[81] Prejudgment interest is awarded to compensate a debtor's estate for a creditor's use of those

---

**76.** Appellants' Br. at 44 (citing 5 *Collier on Bankruptcy,* ¶ 547.04[4][e] (Alan N. Resnick ed., 15th ed. rev.2007)).

**77.** *Id.* (citing *Fitzpatrick v. Rockwood Water, Wastewater and Natural Gas Sys. (In re Tenn. Valley Steel Corp.),* 201 B.R. 927 (Bankr. E.D.Tenn.1996); *Hyman v. Stone Lumber Co. (In re Winter Haven Truss Co.),* 154 B.R. 592 (Bankr.M.D.Fla.1993)).

**78.** *See* findings of fact in *Judgment Memorandum Opinion* at 5–17, *in* Appellants' App. Vol. 9 at 2646–58.

**79.** *See Judgment for Plaintiff* at 1, *in* Appellants' App. Vol. 9 at 2691.

**80.** *Turner v. Davis, Gillenwater & Lynch (In re Inv. Bankers, Inc.),* 4 F.3d 1556, 1566 (10th Cir.1993).

**81.** *Id.*

funds that were wrongfully withheld during the pendency of the suit, unless the award would otherwise be inequitable.[82] Although a few courts have held that a good faith defense mitigates against awarding prejudgment interest,[83] that is not the majority approach.

In this case, the amounts sought by the Trustee were ascertainable prior to judgment. Trustee consistently asked for the amount of payments made during the preference period less any new value defense ConAgra could establish. We reject ConAgra's argument that the amounts sought from it were not sufficiently liquidated to allow for an award of prejudgment interest.

As to ConAgra's argument regarding delay, we agree with the Seventh Circuit's reasoning: "Delay is a reason to award interest, not to avoid interest; the longer the case lasts, the more of the stakes the defendant keeps even if it loses (and the less the victorious plaintiff receives), unless interest is added." [84] Even if the delay is unfortunately attributable to the judicial branch, an award of prejudgment interest still restores the parties to their prelitigation positions.[85] ConAgra had the benefit of the monies at issue while the litigation was pending. There is nothing inequitable or punitive in requiring ConAgra to pay interest for the use of those monies. The bankruptcy court did not abuse its discretion in awarding prejudgment interest on the amounts recovered by the Trustee.

## VI. CONCLUSION

The decision of the bankruptcy court is affirmed in all respects.

---

82. *Id.*

83. *See Sacred Heart Hosp. v. E.B. O'Reilly Servicing Corp. (In re Sacred Heart Hosp.),* 200 B.R. 114, 119 (Bankr.E.D.Pa.1996); *Jones v. Aristech Chem. Corp.,* 157 B.R. 720, 723 (N.D.Ga.1993).

84. *In re Milwaukee Cheese Wis., Inc.,* 112 F.3d 845, 849 (7th Cir.1997).

